59 So.3d 1187 (2011)
In the Interest of T.J., a minor child.
No. 3D10-1111.
District Court of Appeal of Florida, Third District.
April 20, 2011.
*1188 Immigrant Children's Justice Clinic, Karen Pita Loor, and Amber Brishne Glasper, Certified Legal Interns, for appellant.
No appearance for appellee.
Before WELLS, SALTER, and EMAS, JJ.
SALTER, J.
Representatives of the Florida International University College of Law Immigrant Children's Justice Clinic,[1] as next friends of T.J., a minor, appeal a circuit court order summarily denying their amended petition for an adjudication of dependency as to T.J. We review the summary denial of the amended petition under a de novo standard. We reverse and remand the case on the basis of our analysis of section 39.01, Florida Statutes (2010), and persuasive decisions of the Fourth and Fifth District Courts of Appeal.[2] The issue before us is whether, in the case of an immigrant child residing in Florida whose mother has died and whose father's whereabouts are unknown, but who has been cared for by a volunteer with no legally-determined custody, the circuit court may deny a petition for dependency as a matter of law. We also address a second point considered by the trial court, the sufficiency of two[3] affidavits of diligent *1189 search regarding a father who abandoned T.J. and her mother when T.J. was a small child.

The Amended Petition for Adjudication of Dependency
The verified amended petition for adjudication of dependency alleged the salient facts, all assumed to be true for purposes of this analysis. T.J. was born in Turks and Caicos and came to Florida at the age of four months. She has lived here continuously since then. She will turn 18 on August 2, 2011. She is enrolled in a Miami-area high school.
T.J. lived with, and was cared for by, her mother until 2004, when her mother passed away. Her father left T.J. and her mother when T.J. was an infant. An investigation, documented in two affidavits of diligent search, did not disclose her father's whereabouts.
After T.J.'s mother passed away, her aunt voluntarily provided her a place to stay. The aunt does not have any judicially-conferred status as a custodian or guardian of T.J.

The Hearing and Order
At the non-evidentiary hearing on the amended petition, the trial court observed that T.J. had been cared for by her aunt after her mother's death. The trial court determined that the appropriate relief would be a family court petition by the aunt to become T.J.'s legal custodian, and it denied the amended dependency petition. The trial court also denied the amended petition on the ground that T.J.'s father had not been served, but did not address the two affidavits of diligent search for him. This appeal followed.

AnalysisDependency
Section 39.01, Florida Statutes (2010), provides the following definitions (inapplicable excerpts omitted) that apply to the issue before us:
(1) "Abandoned" or "abandonment" means a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver, while being able, makes no provision for the child's support and has failed to establish or maintain a substantial and positive relationship with the child. For purposes of this subsection, "establish or maintain a substantial and positive relationship" includes, but is not limited to, frequent and regular visitation or frequent and regular communication to or with the child, and the exercise of parental rights and responsibilities.
. . .
(10) "Caregiver" means the parent, legal custodian, permanent guardian, adult household member, or other person responsible for a child's welfare as defined in subsection (47).
. . .
(15) "Child who is found to be dependent" means a child who, pursuant to this chapter, is found by the court:
(a) To have been abandoned, abused, or neglected by the child's parent or parents or legal custodians; [or]
. . .
(e) To have no parent or legal custodians capable of providing supervision and care; or
. . .
(24) "Diligent search" means the efforts of a social service agency to locate a parent or prospective parent whose identity or location is unknown, initiated as soon as the social service agency is made aware of the existence of such parent, with the search progress reported at each court hearing until the parent is either identified and located or the court excuses further search.
. . .

*1190 (35) "Legal custody" means a legal status created by a court which vests in a custodian of the person or guardian, whether an agency or an individual, the right to have physical custody of the child and the right and duty to protect, nurture, guide, and discipline the child and to provide him or her with food, shelter, education, and ordinary medical, dental, psychiatric, and psychological care.
. . .
(47) "Other person responsible for a child's welfare" includes the child's legal guardian or foster parent; an employee of any school, public or private child day care center, residential home, institution, facility, or agency; a law enforcement officer employed in any facility, service, or program for children that is operated or contracted by the Department of Juvenile Justice; or any other person legally responsible for the child's welfare in a residential setting; and also includes an adult sitter or relative entrusted with the child's care.
In F.L.M., the Fourth District addressed a similar dependency question and several of these definitions. The child arrived in the United States as an orphan from Guatemala. He had no legal custodian but did have temporary housing in Florida "on a voluntary basis," such that the host family was "under no legal compulsion" to care for him. F.L.M., 912 So.2d at 1266. Although the trial court ultimately declined to find the child dependent, the Fourth District reversed, finding that from the record "it is indisputable that [F.L.M.] qualified as dependent, because he was a child living within our state borders without any parent or legal custodian anywhere. That presented a clear statutory basis for a finding of dependency." Id. at 1269-70.
On the basis of that case, cited by the appellants in their memorandum of law and furnished to the trial court, the court should not have summarily dismissed the amended petition. See Dep't of Children & Families v. K.H., 937 So.2d 807 (Fla. 5th DCA 2006). The legal basis for an adjudication of dependency in a similar case is also detailed in L.T. (though decided after the hearing and dismissal order). In L.T., K.S.L. was an orphan with no legal custodian, but he was released to L.T. (his uncle) as a caregiver "when his boat capsized off the coast of Florida." L.T., 48 So.3d at 929. There, as here, the petitioner was not requesting any services from the Department, but sought an adjudication of dependency to allow K.S.L. "to petition as a special immigrant juvenile." Id. The trial court dismissed L.T.'s dependency petition and instead treated it as a petition for legal custody, because "[t]he child's uncle, the Petitioner, has been his caregiver for the past nine months and will continue to do so." Id. The Fifth District concluded that, at the time of the dependency hearing, "K.S.L. was an orphan with no legal custodian and, therefore, he was dependent." Id. at 930.
In the case at hand, T.J.'s aunt is not a "parent or legal custodian capable of providing supervision and care" under section 39.01(15)(e). Her father has been absent from her life for over ten years and has not been located after diligent search. Under the analysis of F.L.M. and L.T., each of which we find persuasive and applicable, and subject to any evidence that may be offered at the adjudicatory hearing on remand, T.J. has made a prima facie case that she is dependent.[4]
*1191 The practical implications of an adjudication of dependency in this case warrant mention. Based at least on the verified allegations in the amended petition, T.J. should be eligible for placement with her aunt as a "fit and willing relative," section 39.6231, Florida Statutes (2010), and no services have been requested of the Department.[5] The adjudication will permit T.J. to seek federal immigration status as a special immigrant juvenile, and if successful she may be able to work and thereby afford higher education. A summary denial, on the other hand, might incent T.J.'s aunt to truly "abandon" T.J. at a police station or Department office in a misguided effort to obtain a dependency ruling. A summary denial based solely on the aunt's voluntary assistance would penalize T.J., a young woman left in Florida through no fault or action of her own. The aunt's assistance has spared the Department and the State of Florida the expense of caring for a child with no place to go and no parent or legal custodian available to provide care.
The concurring opinion regarding the dependency issue characterizes T.J.'s efforts as a "`back door' route to naturalization." This label is unfair.[6] Her petition is a "legal basis for regularizing the child's immigration status," as accurately observed by two other Florida District Courts of Appeal. F.L.M., 912 So.2d at 1270; L.T., 48 So.3d at 931. In F.L.M., the district court first recounted the Department of Children and Families' public policy argument that "undocumented aliens, usually in their late teens" might use this procedure, and that "such is not a proper use of Florida's laws, courts, and resources devoted to helping truly-dependent, truly-needy children." 912 So.2d at 1269. The district court expressly rejected this argument, holding:
This argument is unavailing, because if a child qualifies for a declaration of dependency under our statutes, the child's motivation to obtain legal residency status from the United States Attorney General is irrelevant. If federal law grants a right to alien children to regularize their immigration status by first obtaining a state court adjudication of dependency, then there is no basis for failing to declare a child dependent so long as he or she meets the statutory criteria for dependency.
Id. Five years later, L.T. reached the same result, concluding that "the denial of the declaration of dependency had the effect of continuing to deprive the child of a legal basis for regularizing the child's immigration status." 48 So.3d at 931.

AnalysisDiligent Search
The trial court's order addressed an alternative ground for denial of T.J.'s petition:[7]

*1192 The father of the child has not been served with the dependent petition. Efforts to find him were documented in an Affidavit of Diligent Search and Inquiry. All efforts to locate the father were made in the United States although the petition states that he might have been deported to Haiti.
As noted, however, T.J. had also filed a second affidavit of diligent search attesting to an unsuccessful inquiry made through the Haitian Consulate General in an effort to find her father in Haiti because of one suggestion that her father might have been deported to that country at some unspecified time. The two affidavits also documented diligent, but unsuccessful, inquiries made of and by T.J.'s aunt and all appropriate state and federal agencies in Florida.
On this issue, I respectfully dissent from my colleagues' determination (in a separate opinion) that T.J.'s affidavits of diligent search were insufficient, such that additional searches must be undertaken by the Department or others on remand. In my view, the "diligent search" requirement has been met on the face of the existing record.[8]
Section 39.502(10), Florida Statutes (2010), provides that "the failure to serve a party or give notice to a participant shall not affect the validity of an order of adjudication or disposition if the court finds that the petitioner has completed a diligent search for that party." The statutory definition of "diligent search," section 39.01(24) (set forth in full above), contemplates the "efforts of a social service agency to locate a parent or prospective parent whose identity or location is unknown." In the present case, the Department has not made any such efforts or expressed any concern that T.J.'s affidavits are insufficient, essentially waiving such objections, based on an admirable decision not to interfere with an adjudication which would benefit an unfortunate child without expense to the Department.
Nor are the affidavits of diligent search insufficient under section 39.503, Florida Statutes (2010), as determined by my colleagues. That statute provides:
Identity or location of parent unknown; special procedures
(1) If the identity or location of a parent is unknown and a petition for dependency or shelter is filed, the court shall conduct the following inquiry of the parent or legal custodian who is available, or, if no parent or legal custodian is available, of any relative or custodian of the child who is present at the hearing and likely to have the information:
(a) Whether the mother of the child was married at the probable time of conception of the child or at the time of birth of the child.
(b) Whether the mother was cohabiting with a male at the probable time of conception of the child.

*1193 (c) Whether the mother has received payments or promises of support with respect to the child or because of her pregnancy from a man who claims to be the father.
(d) Whether the mother has named any man as the father on the birth certificate of the child or in connection with applying for or receiving public assistance.
(e) Whether any man has acknowledged or claimed paternity of the child in a jurisdiction in which the mother resided at the time of or since conception of the child, or in which the child has resided or resides.
(2) The information required in subsection (1) may be supplied to the court or the department in the form of a sworn affidavit by a person having personal knowledge of the facts.
(3) If the inquiry under subsection (1) identifies any person as a parent or prospective parent, the court shall require notice of the hearing to be provided to that person.
(4) If the inquiry under subsection (1) fails to identify any person as a parent or prospective parent, the court shall so find and may proceed without further notice.
(5) If the inquiry under subsection (1) identifies a parent or prospective parent, and that person's location is unknown, the court shall direct the petitioner to conduct a diligent search for that person before scheduling a disposition hearing regarding the dependency of the child unless the court finds that the best interest of the child requires proceeding without notice to the person whose location is unknown.
(6) The diligent search required by subsection (5) must include, at a minimum, inquiries of all relatives of the parent or prospective parent made known to the petitioner, inquiries of all offices of program areas of the department likely to have information about the parent or prospective parent, inquiries of other state and federal agencies likely to have information about the parent or prospective parent, inquiries of appropriate utility and postal providers, a thorough search of at least one electronic database specifically designed for locating persons, and inquiries of appropriate law enforcement agencies. Pursuant to s. 453 of the Social Security Act, 42 U.S.C. s. 653(c)(4), the department, as the state agency administering Titles IV-B and IV-E of the act, shall be provided access to the federal and state parent locator service for diligent search activities.
(7) Any agency contacted by a petitioner with a request for information pursuant to subsection (6) shall release the requested information to the petitioner without the necessity of a subpoena or court order.
(8) If the inquiry and diligent search identifies a prospective parent, that person must be given the opportunity to become a party to the proceedings by completing a sworn affidavit of parenthood and filing it with the court or the department. A prospective parent who files a sworn affidavit of parenthood while the child is a dependent child but no later than at the time of or prior to the adjudicatory hearing in any termination of parental rights proceeding for the child shall be considered a parent for all purposes under this section unless the other parent contests the determination of parenthood. If the known parent contests the recognition of the prospective parent as a parent, the prospective parent shall not be recognized as a parent until proceedings under chapter 742 have been concluded. However, the prospective parent shall continue to receive *1194 notice of hearings as a participant pending results of the chapter 742 proceedings.
As the record here discloses, no parent or legal custodian is available, and no relative or custodian was present at the hearing. Subsection (1) was inapplicable, and the affidavits of diligent search included all known information in the form of an affidavit as permitted by subsection (2). Regarding subsection (3), notice to T.J.'s father could not be provided for the reasons previously detailed: he has not been seen or heard from since T.J. was a small child. Subsection (4) is inapplicable, and subsection (5) grants the trial court the authority to "direct the petitioner to conduct a diligent search before the disposition hearing," or to proceed "without notice to the person whose location is unknown" if that is in the best interest of the child. My colleagues have not referred to this portion of the statute, but have instead determined (without consideration of the "best interest" requirement expressed in section 39.503(5)) that T.J. must meet additional search requirements in section (6). These requirements were not mentioned by the trial court in the order of denial, and the Department and Guardian Ad Litem program did not raise them below or here. On this record, it is quite clear to me that T.J.'s search efforts were diligent and extensive, and that none of the partiesonly my colleaguesdoubt that proceeding without additional attempts at notice are in the best interest of T.J.
I therefore respectfully dissent from my colleagues' conclusions on this separate issue.

Conclusion
We reverse the order denying the amended petition and remand this case to the trial court for further proceedings consistent with this opinion and the opinion which follows. As regards T.J.'s entitlement to an adjudication of dependency, the panel agrees upon reversal. As regards the sufficiency of the affidavits for diligent search, my colleagues have determined that further action is required upon remand, while I respectfully dissent from that holding and would find the existing affidavits sufficient based on an uncontroverted record that the requested adjudication of dependency is in T.J.'s best interest.
Reversed and remanded for further proceedings.
WELLS, Judge. (concurring in part and dissenting in part).
While I concur in the decision to reverse the summary denial of the instant dependency petition for further proceedings below, I cannot agree with the conclusion that because T.J. has conducted a diligent search for her father and failed to locate him that we may presume that he is unable to care for her thereby mandating an adjudication of dependency.
This appeal stems from a dependency petition filed by the Immigrant Children's Justice Clinic at Florida International University College of Law seeking to have seventeen year old T.J. declared dependent for the express purpose of permitting her to seek special immigration juvenile status. See § 39.501(1), Fla. Stat. (2010) ("All proceedings seeking an adjudication that a child is dependent shall be initiated by the filing of a petition by an attorney for the department [of Children and Families], or any other person who has knowledge of the facts alleged."). As the Immigration Clinic candidly admitted at oral argument, T.J. has been cared for and fully supported by her aunt since her mother died in 2004, and will continue to be so in the future; thus what T.J. is seeking here is to be declared dependent to secure a "back door" route to naturalization. *1195 While I do not believe that Chapter 39 was ever intended to secure a pathway to citizenship for foreign minors, I must agree that the manner in which that Chapter currently is written may be interpreted to provide an avenue for such use. See § 39.001(1), Fla. Stat. (2010) (stating generally the purpose of Chapter 39 as being to provide for the care, safety and protection of children).
Specifically, section 39.01(15), as pertinent here, defines a dependent child as a child who has been abused, abandoned, or neglected or who has no parent or legal guardian capable of caring for her or him:
(15) "Child who is found to be dependent" means a child who, pursuant to this chapter, is found by the court:
(a) To have been abandoned, abused, or neglected by the child's parent or parents or legal custodians;
. . . .
(e) To have no parent or legal custodians capable of providing supervision and care. ...
§ 39.01(15), Fla. Stat. (2010).
T.J. focuses primarily on subsection (15)(e) to support her dependency claim. This is so because she does not fall within the definition of an abandoned child. Under Chapter 39 an abandoned child is one whose parent, legal custodian, or "caregiver, while being able, makes no provision for the child's support. ..." § 39.01(1), Fla. Stat. (2010) (emphasis added); § 39.01(10), Fla. Stat. (2010) (defining the term caregiver as "the parent, legal custodian, permanent guardian, adult household member, or other person responsible for a child's welfare as defined in subsection (47)) (emphasis added); § 39.01(47), Fla. Stat. (2010) (including in the definition of "[o]ther person responsible for a child's welfare," any "adult sitter or relative entrusted with a child's care"). Since it is conceded here that T.J.'s aunt has provided for T.J.'s support since 2004 and intends to continue to do so, T.J. cannot be deemed dependent as an abandoned child.
The question to be resolved is, therefore, whether T.J. has no parent or legal custodian "capable of providing supervision or care." § 39.01(15)(e), Fla. Stat. (2010). As to whether T.J. has a legal custodian, the record is clear: she has none. See § 39.01(35), Fla. Stat. (2010) (defining the term legal custody as "a legal status created by a court"). As to whether T.J. has a parent, the record is equally clear: while T.J.'s mother died in 2004, her father is alive and living somewhere. Thus on remand, it must be determined whether T.J.'s father is "capable" of providing supervision and care to her. Anything less contravenes the express language of section 39.01(15)(e) and opens wide the door to parents wishing to secure either a back door immigration route into the United States or funds and services from the State of Florida by simply leaving an otherwise fully supported and properly cared for child with a close relative so that relative or any other kindly soul or organization may obtain a dependency adjudication.
Judge Salter concludes that T.J. need not adduce any testimony regarding her father's ability to care for her because, notwithstanding the trial court's express finding to the contrary, T.J. has conducted a diligent search and because she has been unable to locate him, need not prove anything with respect to him. As the record before us confirms, no diligent search under Chapter 39 has taken place.
Section 39.502 of the Florida Statutes clearly states that until a parent's rights are terminated, that parent must be notified of all proceedings involving a child:
(1) Unless parental rights have been terminated, all parents must be notified *1196 of all proceedings or hearings involving a child. ...
§ 39.502(1), Fla. Stat. (2010) (emphasis added).
Section 39.503 provides that where, as here, a parent's whereabouts are currently unknown, the court "shall direct the petitioner to conduct a diligent search for that person before scheduling a disposition hearing regarding the dependency of the child unless the court finds that the best interest of the child requires proceeding without notice." § 39.503(5), Fla. Stat. (2010). While by definition a diligent search is one conducted by the Department of Children and Family Services, a licensed child-caring agency, or a licensed child-placing agency[9], under section 39.503(5), it appears that the court below could direct a non-department petitioner to conduct a search. Id.
Although the court below never directed T.J. to conduct a diligent search, and the Department never conducted one, two "diligent search" affidavits were filed in this case by attorneys at Florida International University's College of Law, Immigrant Children's Justice Clinic. Neither of these affidavits meets the minimum legal requirements set forth in Chapter 39 and are not, as the court below recognized, legally sufficient.
More specifically, section 39.503(6) sets forth the minimum requirements necessary to constitute a diligent search. They are (1) inquiries of all relatives of the missing parent made known to the petitioner; (2) inquiries of all program offices of the department likely to have information about the missing parent; (3) inquires of state and federal agencies likely to have information about the missing parent; (4) inquires of utility companies and postal providers; (5) a thorough search of at least one electronic database specifically designed for locating persons; and, (6) inquiries of appropriate law enforcement agencies:
The diligent search required by subsection (5) must include, at a minimum, inquiries of all relatives of the parent ... made known to the petitioner, inquiries of all offices of program areas of the department likely to have information about the parent ..., inquiries of other state and federal agencies likely to have information about the parent...., inquires of appropriate utility and postal providers, a thorough search of at least one electronic database specifically designed for locating persons, and inquires of appropriate law enforcement agencies. ...
§ 39.503(6), Fla. Stat. (2010) (emphasis added).
The affidavits filed in this case do not satisfy these requirements in many respects. For example, as for inquiries of all relatives of the parent made known to the petitioner, the affidavit at issue here states only that "[a] representative from the [Florida International University College of Law] Clinical Program has spoken with the Child's aunt, [who has indicated] that she does not have an address for the father, does not know his location and she was unable to acquire any information that could lead to locating [the father]." This hearsay statement that one of the mother's relatives does not have the father's address *1197 or know his location is simply inadequate. The question should, as the court below recognized, have been whether this child or any other known relative of the father, knew the father's whereabouts or the names and locations of any other relatives who might have such information. Indeed, the dependency petition expressly states that T.J. has an older sibling with whom she shares parentage. Despite this admission, the affidavit nowhere states that any inquiry was made of this sibling as to the whereabouts of their father. In this respect the affidavit is woefully inadequate.
The affidavit also does not state which department program offices the petitioner contacted to inquire about T.J.'s father and it fails to state which, if any, utility providers it has contacted, all as required by section 39.503. Most importantly, however, it fails to state what efforts were made to discover his immigration status to ascertain whether he had entered the country legally and whether he had been deported, inquires that might well lead to locating him, i.e. no inquiry was made of the "federal agencies likely to have information [about the father]." See In re T.R.F., 741 So.2d 1184, 1186 (Fla. 2d DCA 1999) ("We conclude that neither [of petitioner's] affidavit[s] complied with the requirements of section 39.4051(6) [now 39.503]. The affiant did not check the offices of the department likely to have information about the father, other state and federal agencies likely to have information about the father, utility and postal providers, or appropriate law enforcement agencies.").
In short, the affidavits filed by the petitioner in this case failed as a matter of law to satisfy the minimum requirements of section 39.503. This court is not, therefore, in a position to reverse the trial court's determination that a diligent search has not been conducted in order to skip directly to the conclusion that because T.J.'s father has not been found T.J. is absolved of the obligation to prove that she has no parent capable of caring for her.
Thus, while the summary denial should be reversed, T.J. is not entitled to an adjudication of dependency until such time as a diligent search is conducted in accordance with the express provisions of Chapter 39 and if her father is located, until after T.J. establishes that she is dependent as that term is defined by Chapter 39.
EMAS, J., specially concurring.
I join in that portion of Judge Salter's opinion which reverses the trial court's order summarily denying the amended petition and remanding this cause to the trial court for further proceedings.
I join in that portion of Judge Wells' opinion which affirms the trial court's determination that the affidavits of diligent search did not satisfy the requirements of Florida Statutes, section 39.503.
NOTES
[1] The procedural posture of this appeal is unusual because of the "private petition" filed by the Immigrant Children's Justice Clinic. The Department of Children and Families did not brief or argue either side of the issue below or on appeal, and the Florida Guardian Ad Litem Program, Eleventh Judicial Circuit, was a nonparty below and here. We appreciate the public interest work done by the Clinic and other law school clinics in South Florida, and we acknowledge the professional oral argument provided by the certified legal intern (law student) who presented T.J.'s case.
[2] F.L.M. v. Department of Children & Families, 912 So.2d 1264 (Fla. 4th DCA 2005) (hereafter, "F.L.M."), and L.T. v. Department of Children & Families, 48 So.3d 928 (Fla. 5th DCA 2010) (hereafter, "L.T."). L.T. was issued November 23, 2010, several months after the trial court's hearing and decision on the amended petition.
[3] The trial court order refers to a single affidavit, but there were two (July 9, 2009, and March 23, 2010), as detailed below.
[4] T.J. may also qualify as an "abandoned" child under sections 39.01(1) and 39.01(15)(a). We do not reach that question because of our determination that section 39.01(15)(e) is applicable. Abandonment is a more fact-intensive question, turning in this case on the definition of "caregiver" (§ 39.01(10)) and whether T.J.'s aunt is an "adult household member, or other person responsible for a child's welfare as defined in [section 39.01(47)]," raising in turn the question of whether T.J.'s aunt was ever "entrusted with" or "responsible for" T.J.'s care. As detailed in F.L.M. and L.T., an analysis under section 39.015(e) is independently sufficient.
[5] The significance of "no request for services" was not lost on our sister District Courts in F.L.M. and L.T., nor has it been lost on us. If dependent immigrant children deplete "State resources for other needy children," F.L.M. at 1270, the Department and Legislature might alter the existing criteria for dependency.
[6] Webster's Third New International Dictionary, Unabridged Edition 158 (1st ed.1986), includes as its second meaning for "back door," "an indirect, surreptitious, underhanded, or illegal means or way."
[7] The trial court actually had before it an amended petition that attempted to respond to the trial court's comments in dismissing the original petition without prejudice.
[8] The practical effect of the additional fact-finding by the Department (as required by my colleagues' opinion) is plain. In the trial court, counsel for the Department did not initiate a diligent search or question the adequacy of the affidavits of diligent search after the petition and amended petition were filed. In the appeal to this Court, the Department filed a motion (which was granted) to correct the style of the case to delete the designation of the Department as an appellee. The Court directed any party, including the Department and the Guardian Ad Litem Program, opposing T.J.'s position to file an answer brief by November 22, 2010, and no such brief was filed. "Diligent search," apparently a non-issue to the Department, has become my colleagues' issue. If such a search takes three or four months for completion by the Department, T.J. will turn 18. The imposition of that requirement is thus likely to "deprive the child of a legal basis for regularizing the child's immigration status." L.T., 48 So.3d at 931.
[9] In pertinent part section 39.01(24) and (70) provide:

(24) "Diligent search" means the efforts of a social service agency to locate a parent or prospective parent whose identity or location is unknown. ...
. . . .
(70) "Social service agency" means the department, a licensed child-caring agency, or a licensed child-placing agency.
§ 39.01(24), (70), Fla. Stat. (2010) (emphasis added).