912 So.2d 1264 (2005)
F.L.M., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, STATE OF FLORIDA, Appellee.
No. 4D04-3163.
District Court of Appeal of Florida, Fourth District.
November 2, 2005.
David Shahoulian and Lenore C. Smith of Holland & Knight, LLP, Miami, Jonel Newman, Florida Legal Services, Miami, and Anne Ketover Watkins of Anne Ketover Watkins, P.A., Port St. Lucie, for appellant.
Crystal Y. Yates-Hammond, Fort Pierce, for appellee.
Iris S. Rogatinsky and Jodi E. Samuels of Weil, Gotschal & Manges, LLP, Miami, for Amicus Curiae Florida's Children First, Inc.

*1265 ON MOTION FOR REHEARING

PER CURIAM.
We grant rehearing, withdraw our May 18, 2005, opinion and in its place substitute the following.
In this dependency case, the child showed up in the United States as an orphan from Guatemala. He had no legal custodian but lived here and there, finding work when he could. He now has temporary housing with a local family on a voluntary basis. Because he does not have legal status, however, he is unable to obtain an alien work permit. This petition was filed on his behalf to obtain a declaration by a State Court that he is a dependent child under Florida law, which he could then use to apply to the United States Attorney General for a residency work permit. It is the trial court's refusal to grant such a declaration that brought this case, tempest tossed, to our doors.
*1266 He was born in Guatemala on January 12, 1986. His father died in 1993, his mother in 1996. Orphaned at age 10, he stayed in Guatemala for the next few years and lived with an aunt and uncle. Struggling for the necessaries of life and unable to get an education, he left Guatemala at the age of 14 in December 2000 to join an older brother who then lived here in Indiantown. He left the brother's house, however, and has since lived with other people. He has supported and cared for himself, sometimes going without food.
He recently fathered an infant son, but he and the mother are not married. The mother's family has voluntarily furnished him with a place to stay. The family is under no legal compulsion to do so.
The petition was filed by a local attorney acting both as petitioner and counsel for the child. At one point petitioner states that she "believes that the minor child has been abandoned by his parents due to their deaths." This statement is part of the general background. Later in the petition, petitioner alleges that "the minor child is dependent within the intent and meaning of [section] 39.01, Florida Statutes."
The trial court held a final hearing on the petition on November 13, 2003. At trial, evidence established that the boy was 17 years old, that his parents are both deceased, and that he has no legal custodian. Petitioner made clear that she was not seeking services from the Department of Children and Families, and that she sought only that the child be declared dependent in order to seek legal residency in the United States under the federal special immigrant juvenile visa program. She argued that such a declaration would be in his best interest as well as that of his infant child.
At the point where the evidence indicated that this child had himself fathered an infant son, the trial judge expostulated that he was now "emancipated". The Department did not make any objection on that ground at the hearing, however; it was the trial judge who raised the question. Florida law does allow for the self-executing "emancipation" of minor children who marry. See § 743.01, Fla. Stat. (2004) ("The disability of nonage of a minor who is married or has been married or subsequently becomes married ... is removed."). But there is nothing in the record that this child has ever married. Another statute allows for minors to petition a court through a guardian to be treated as adults. § 743.015, Fla. Stat. (2004). There was no evidence that he has ever done so. He was still a child; he continued in his unmarried minority within the meaning of our laws right up through the trial itself and even after.
At that point in the trial the following colloquy occurred between the judge and the attorney for the Department:
COURT: What is the Department's position?
COUNSEL: Judge, I'll leave it up to the Court. My understanding is that he is self-supporting inasmuch as he earns [indiscernible] jobs and that he does live with people who are willing to undertake his living accommodations until he's eighteen. That's all I really know at this point.
* * *
COURT: Does the Department feel that he's dependent?
COUNSEL: I think he technically meets the definition of abandonment if there's no parents or legal custodian. I understand he's living with his girlfriend's parents, but I don't think they have any legal obligation for his support. [e.s.]
*1267 At the conclusion, the trial judge simply stated, "All right, submit the order."
We see no ambiguity in the trial judge's final comment: "All right, submit the order." The Clerk's trial notes reflect the following: "Judge grants dependency on the child." [e.s.]
Counsel sent a proposed order declaring dependency and a letter asking the judge to sign the order based on the judge's findings and instructions at the hearing. Counsel also reminded the trial court that the child would reach the age of 18 on January 12, 2004. The child's attorney made several requests to the office of the assigned judge for the entry of the order, but none was ever forthcoming. The trial judge took no action on the request. As a result, on January 8, 2004, counsel filed an emergency motion for the declaration of dependency to "obtain the order ... prior to the child's 18th birthday." Counsel tells us:
"In the late afternoon of January 9, 2004, a Friday, the ... Judge's clerk contacted undersigned via telephone relaying the Judge's response to the Emergency Motion, to wit, that the judge would not sign the order unless he obtained a letter from Citizenship and Immigration Services stating that he had jurisdiction to preside over this matter."
Counsel attempted to obtain the requested letter, but INS declined to send such a letter because "it is agency policy not to write such letters for children who have never been in the actual or constructive custody of immigration authorities." On July 23, 2004, the child filed a motion seeking an order, nunc pro tunc,[1] for the trial judge to sign the dependency order. Later the same day, the trial court denied the motion without prejudice. Thence this appeal.
From the refusal to sign the order that he himself had earlier directed counsel to submit, it is apparent to us that the trial judge thought he lacked jurisdiction to do so without the consent of the Attorney General. We can infer his probable reason from the words used and their context. His denial of the last motion "without prejudice" after having previously granted the petition at the end of trial evidences a post trial notion that the Attorney General's consent was necessary to the declaration and that upon receipt of such consent he would sign the order. We think the trial judge erred in that regard.
In 1997 Congress amended federal statutes to afford children special immigration status within the United States. 8 U.S.C. § 1101(a)(27)(J)(i)-(iii) (2002). In its essential terms, this statute allows an alien child "who has been declared dependent [by] a juvenile court located in the United States" to appeal to the Attorney General for legal residency status. The statutory text makes clear, however, that a state court is precluded from declaring dependency without the Attorney General's consent only if the Attorney General has actual or constructive custody of the child. Nothing in this record would support a finding that the Attorney General has ever had any custody of the child.
In P.G. v. Department of Children & Family Services, 867 So.2d 1248, 1249 (Fla. 4th DCA 2004), we held that the trial court lacked jurisdiction over a child to declare dependency because the child was then in the constructive custody of the Attorney General, who had released him to an uncle. But where a child has never been in the custody of the Attorney General, *1268 as here, we now explicitly hold that the statute makes no such consent necessary.
There was no jurisdictional basis for the trial judge to refuse to sign the order. Because the trial judge's only reason for denying entry of the order has been shown to be legally insufficient, we assume that if he had been given the correct understanding of the law he would have signed the order, as he in fact indicated at the close of trial.
The Department was represented at the trial and acknowledged that it had no objections, that the child met the statutory requirements, and that the child qualified as dependent under our law. Nevertheless, on appeal the Department now argues that several deficiencies stand in the way of a reversal. It argues that the child failed to serve the Department properly, that notice of the hearing was insufficient, that the petition was not verified, that no predisposition hearing had been held, that there is no predisposition study, that there is no case plan, and that there was no specific finding by the trial judge that the child is eligible for long term foster care. It is clear to us that the Department waived all these alleged procedural defects by failing to assert them at the trial.
The Department now attempts for the first time to argue that the child did not qualify as dependent. This is plainly contrary to the position that the Department took in the trial court. The Department then was not only willing to leave that decision up to the trial judge but it also actually conceded to the court that, because he has no parents or legal custodian, "he technically meets the definition of abandonment if there's no parents or legal custodian." The Department acknowledged that although the child was then living with a family they did not have any legal obligation to support him.
Essentially the Department argues that an orphaned alien child living in Florida without any legal custodian is not dependent under our statute. Section 39.01(14)(e) states that: a ("`[c]hild who is found to be dependent' means a child who... is found by the court ... [t]o have no parent or legal custodians capable of providing supervision and care."). § 39.01(14)(e), Fla. Stat. (2005). The wording of this provision seems to begin with a conclusion (a child found to be dependent), and then ends with the basis for that conclusion (found by the court to have no parent or legal guardian).
The initial phrase, child who is found to be dependent, is the subject of the sentence. In context this initial phrase "child who is found to be dependent"  does not refer to judicial fact-finding because the obvious purpose is to provide a definition of a "dependent child." If this initial phrase were read to refer to judicial fact-finding, the sentence would literally say "a child who is found to be dependent is a child who is found to be dependent." Thus this initial phrase should be understood to mean a child who is discovered in circumstances demonstrating a reliance on persons other than a parent or legal guardian. It refers to a condition discovered to exist that defines the subject.
After this initial phrase, the sentence uses the transitive verb means to relate the subject to a legal result if certain facts are found by the court. These facts are specified as: (1) the loss of both parents, and (2) the absence of any legal custodian. If those facts are found to exist, the text stipulates that the child is, as a matter of law, dependent. The text might just as well have been formulated thus: A child found by the court to have no parent or legal custodian capable of providing supervision and care is dependent. Either way the meaning is inescapable: a minor *1269 child in Florida without parents or legal guardian is dependent under Florida law.
At trial when the judge asked the Department if the child is dependent, counsel responded using the term abandoned. This is not properly characterized as an abandonment case. The same definitional statute defines abandoned as the failure (of whoever is responsible) while being able to provide a minor child with support, guidance and supervision. Strictly speaking, the term abandoned is not appropriate when the parents or guardian have died because, in that event, they are no longer able to do anything. The real question was whether an orphaned child without a legal custodian is dependent. Section 39.01(14)(e) provides the answer. When a judge finds that a child is orphaned and has no legal custodian, the legal conclusion is that the child is dependent. Those facts are the ones proven at the hearing. The child had lost both his parents to death, and there had never been anyone appointed by a legal authority to be his custodian. His circumstances fit exactly within the statutory definitions.
For these reasons, the Department's reliance on S.H. v. Department of Children & Families, 880 So.2d 1279 (Fla. 4th DCA 2004), is misplaced. There the child was not an orphan; his parents were still living in Guatemala. The child's residency with an uncle in Florida was undertaken with the permission and consent of his living parents. Hence the child was not legally dependent because he was not abandoned. In contrast, here the child has no parents, no legal custodian, and no caregiver legally responsible for his welfare. His caregiver at the time of trial was a mere volunteer without legal appointment. Under these circumstances the child met the statutory requirements for dependency under section 39.01(14)(e).
The Department recurs to a public policy argument on appeal that Florida courts should refuse to make use of the statute Congress intended for alien juveniles to use because:
"Many undocumented aliens, usually in their late teens, have attempted to utilize [8 U.S.C. § 1101(a) ] in the circuit dependency courts of south Florida for years, and that is precisely what Appellant is attempting to do in this case. However ... such is not a proper use of Florida's laws, courts, and resources devoted to helping truly-dependent, truly-needy children."
This argument is unavailing, because if a child qualifies for a declaration of dependency under our statutes, the child's motivation to obtain legal residency status from the United States Attorney General is irrelevant. If federal law grants a right to alien children to regularize their immigration status by first obtaining a state court adjudication of dependency, then there is no basis for failing to declare a child dependent so long as he or she meets the statutory criteria for dependency.
The Department also argues that the claim for a declaratory judgment is moot because the child reached his majority while the case was pending in court. We do not think the matter is moot simply because of the removal of the disability of nonage. To be sure, the passage of the child into legal adulthood effectively terminates any necessity for the State to provide him with  or supervise the provision of  services under the child dependency laws.
When this matter was ready for a final determination and submitted to the court below, the trial judge acknowledged that the child met all the requirements for a declaration of dependency under Florida law. From the record it is indisputable that he qualified as dependent, because he was a child living within our state borders without any parent or legal custodian anywhere. *1270 That presented a clear statutory basis for a finding of dependency. Because the denial of that declaration has the effect of continuing to deprive him of a legal basis for regularizing his immigration status, the issue is not moot.
We again stress that, because he was being allowed to reside with a local family, he did not have any need for services from the State. The conditions of his residency with the family of the mother of his child gave no cause to the Department for concerns about his well-being. For the few days then remaining in the child's minority, the trial judge could simply have made a formal finding that the voluntary provision of such services by the family would suffice under our dependency statutes. There was no need for further home study, a case plan or placement. There would have been no depletion of State resources for other needy children. But this dependent child would at least have been given the opportunity to ask the United States Attorney General to grant him, if he be so advised, resident alien status. No one involved in this case has shown any legal reason why that should not have been allowed to happen.
The judge in question having since retired, we therefore return this case to a successor judge with instructions to enter an order nunc pro tunc[2] declaring the child dependent under Florida law and further providing that the Department's responsibility over him necessarily terminated when he attained the age of 18.
It is so ordered.
FARMER, SHAHOOD, and TAYLOR, JJ., concur.
NOTES
[1] A Latin phrase meaning "now for then."
[2] Tunc being January 8, 2004.