DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**O.I.C.L.,** a child,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES,**
Appellee.

No. 4D15-53

[July 22, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James L. Martz, Judge; L.T. Case No. 2014DP300726.

Jan Peter Weiss of Law Offices of Jan Peter Weiss, West Palm Beach, for appellant.

No brief filed for appellee.

KLINGENSMITH, J.

Appellant O.I.C.L. (the "Child") is an illegal immigrant from Guatemala who appeals the final order denying his private petition for adjudication of dependency. The petition sought an adjudication of dependency on essentially two grounds: (1) that the Child has "been abandoned . . . by [his] parent or parents or legal custodians"; and (2) that the Child has "no parent or legal custodians capable of providing supervision and care." § 39.01(15)(a), (e), Fla. Stat. (2014). For the reasons set forth below, we affirm the trial court's denial of the petition.

A private petition for adjudication of dependency was filed on the Child's behalf two and a half months before his eighteenth birthday. The petition alleged that the Child's father had abandoned him, and that his mother had neglected him since he was twelve years old by not providing enough food, water, and clothing for the Child. The petition also alleged that the mother could not continue supporting the Child, so when he turned seventeen he left home (the petition claims he was "kicked out") to come to the United States. After conducting the evidentiary hearing, the trial court entered an order denying the petition, finding that the Child did

not qualify as dependent, and was admittedly being well-cared-for by an uncle who the court described as "a ready willing and able relative" against whom no allegations of abandonment, abuse, or neglect were made.

Petitioner argued that if the Child was not found dependent by the court, he may be forced to return to Guatemala. Clearly the purpose for this proceeding was to assist the Child in securing a Special Immigration Juvenile Status ("SIJS") visa that would enable him to apply for lawful permanent residency (a green card), and secure a path to possible citizenship.[1] To be eligible for SIJS status, an alien minor must: (a) have been "declared dependent [by] a juvenile court located in the United States";[2] and (b) that court must find that "it would not be in the alien's best interest to be returned" to their country of origin, a finding commonly found in what is referred to as a "best-interest order."[3]

To take advantage of these provisions of federal law, private petitions are often filed seeking both a dependency adjudication and best-interest order. These petitions usually allege that the child had been "abandoned, abused, or neglected" in their home country, § 39.01(15)(a), many times in the months or years prior to the filing of the petition, sometimes including admissions in affidavits from parents in foreign countries to wrongful or neglectful acts. These petitions also routinely allege that the child is at "substantial risk of imminent abuse, abandonment, or neglect" if returned to their country of origin. § 39.01(15)(f). It is also standard fare for these petitions to allege, as did the petition filed by the Child, that there is "no parent or legal custodian[] capable of providing supervision and care," § 39.01(15)(e), which would serve to provide another basis for a finding of a dependency.

A trial court's discretion in child welfare proceedings is very broad. A "court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record." *E.R. v. Dep't of Children & Families*, 143 So. 3d 1131, 1134 (Fla. 4th DCA 2014)

---

[1] Immigration and Naturalization Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (1990), *amended by* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 (2008).

[2] 8 U.S.C. § 1101(a)(27)(J)(i) (2014). A "juvenile court" is "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a) (2015).

[3] 8 U.S.C. § 1101(a)(27)(J)(ii).

(quoting *C.A. v. Dep't of Children & Families*, 958 So. 2d 554, 557 (Fla. 4th DCA 2007)).

These types of petitions have become increasingly common, often containing allegations very similar to those made in this case. They routinely share the following common elements: the child is about to turn eighteen years old; the Department of Children and Families ("DCF") neither supports nor opposes the child's petition; the child agrees not to seek any services from the State; one or more of the child's parents sign consent forms agreeing to entry of a dependency order; no testimony is presented to the court opposing the petition; and, DCF files no briefs in any subsequent appeal. As courts are likely to continue encountering more of these cases in the future, we believe some guidance on the proper handling of these cases is required.

The predominant question presented to the trial courts in these "private petition" cases, specifically, whether an alien child is dependent under the definition provided by section 39.01, is almost never subjected to a true adversarial proceeding in any manner whatsoever, where evidence is taken and "countervailing position[s] [are] advanced." *Dep't of Children & Families v. Y.C.,* 82 So. 3d 1139, 1144 (Fla. 3d DCA 2012). At their core, these petitions are probably best described as "merely an unopposed request for the assistance of the court," *id.* at 1142, for entry of orders to help a child obtain legal immigration status.

Here, following a hearing on the merits, the trial court found that an adjudication of dependency was unwarranted. Relying on our decision in *S.H. v. Dep't of Children & Families*, 880 So. 2d 1279 (Fla. 4th DCA 2004), the court determined that the Child's uncle qualified as a "caregiver," and was entrusted with the Child's care in accordance with sections 39.01(10) and (47). The evidence revealed that the Office of Refugee Resettlement, the government agency that picked up the Child following his attempt to illegally enter the United States, released the Child to the uncle while his immigration charges remained pending.

Section 39.01(47) allows certain employees of certain governmental agencies, such as the immigration agency involved here, to be considered a caregiver. Thus, upon entering the United States, this agency released the Child and entrusted him to the care of the uncle, thereby making the uncle a relative caregiver under the statutory definition. *See* § 39.01(10) (defining caregiver in part as an "adult household member"); *see also* § 39.01(47) (stating that "any other person legally responsible for the child's welfare in a residential setting" is a "person responsible for a child's

welfare"); § 39.01(65) (defining "relative" as "a grandparent, great-grandparent, sibling, first cousin, aunt, uncle, great-aunt, great-uncle, niece, or nephew, whether related by the whole or half blood, by affinity, or by adoption. The term does not include a stepparent"). The trial court correctly found that the uncle's presence and care for the Child meant the circumstances did not meet the definition of abandonment necessary for an adjudication of dependency. As there were no allegations of abandonment, abuse, or neglect against the uncle, a presumption arose that he was indeed "capable of providing [both] supervision and care" to the Child. § 39.01(15)(e).

We also consider another vexing issue illustrated by some of the allegations made in the Child's petition – whether a dependency adjudication can be based on alleged abuse or neglect occurring at any time, even if remote to the petition's filing. The petition filed in this matter alleged that the "mother began neglecting [the Child] when he was twelve years old," and "continued for at least five years." This claim appears as a predicate to the more specific allegation that the Child was "forced to drop out of school after the sixth grade" and sent out "every day to work in the fields to earn money for the family."

Chapter 39 defines a dependent child, in part, to include one found by the court to have been "abandoned, abused, or neglected" by the child's "parents or legal custodians." § 39.01(15)(a). Absent from this particular definition is a requirement that the alleged abuse or neglect occur within a specified period of time prior to the filing of the petition. If section 39.01(15)(a) were to be applied literally, it would permit a child to be adjudicated dependent provided they had been abused or neglected *at any time* and regardless of whether they were at risk of further abuse or neglect. For example, the statute – again, if applied literally – would permit the adjudication of a seventeen-year-old based upon an isolated incident of "abuse" inflicted at the age of two by a long since deceased parent; a clearly "unreasonable or ridiculous conclusion." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (stating that "a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion"). To find a child dependent under such circumstances would stretch section 39.01(15)(a) far beyond any reasonable limit, and endorse a rule permitting the adjudication of any child ever subjected to abuse, abandonment, or neglect by a parent at any point during their minority. We do not believe that the legislature intended for section 39.01(15)(a) to be read and applied in such an expansive way that would provide for such an absurd result. *See Vrchota Corp. v. Kelly*,

42 So. 3d 319, 322 (Fla. 4th DCA 2010) ("The legislature is not presumed to enact statutes that provide for absurd results.").

Further, a child living in conditions of poverty, in and of itself, is insufficient to sustain a finding of either abandonment or neglect. Section 39.01(1) states in pertinent part that an abandoned child is one found in:

> [A] situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver, *while being able*, has made no significant contribution to the child's care and maintenance or has failed to establish or maintain a substantial and positive relationship with the child, or both.

§ 39.01(1) (emphasis added).

Additionally, section 39.01(44), states that:

> "Neglect" occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired. *The foregoing circumstances shall not be considered neglect if caused primarily by financial inability unless actual services for relief have been offered to and rejected by such person.*

§ 39.01(44) (emphasis added).

Finally, section 39.01(30)(f) provides:

> Neglects the child. Within the context of the definition of "harm," the term "neglects the child" means that the parent or other person responsible for the child's welfare fails to supply the child with adequate food, clothing, shelter, or health care, *although financially able to do so or although offered financial or other means to do so.*

§ 39.01(30)(f) (emphasis added).

Contrary to the assertions raised in the Child's petition, living conditions of the kind routinely found in many lesser-developed countries

where parents are financially unable to support a child, including but not limited to situations such as dropping out of school at an early age, working fields for income to support a family, infrequent receipt of new clothes or shoes, and limited access to electricity or other utilities of any kind are, without more, insufficient to support a finding of dependency unless substantial, competent evidence supports a finding that the parents were financially able but refused to provide support thereby "evinc[ing] a willful rejection of parental obligations," *S.H.,* 880 So. 2d at 1280, or that financial or relief services were offered to the parents and rejected.

When evaluating the facts supporting these private dependency petitions, trial courts should consider: (1) the nature, severity and frequency of the abuse, neglect or abandonment; (2) the time that has elapsed between the abuse, neglect or abandonment and the filing of the petition; (3) whether the child is presently at a continued, but not necessarily imminent, risk of harm before turning eighteen years old; (4) the availability of a caregiver capable of providing both supervision and care; and (5) any other relevant factors unique to the particular case.

This approach is consistent with prior decisions from this court, and others, holding that incidents of alleged abuse which are "too remote in time" will generally not support a dependency adjudication absent a continuing threat of harm. *See, e.g., B.C. v. Dep't of Children & Families*, 846 So. 2d 1273, 1275 (Fla. 4th DCA 2003) (stating that instances of domestic violence in the presence of the child, occurring more than a year and a half prior to filing, were "simply too remote in time to support an adjudication of dependency"); *see also In re K.V.*, 939 So. 2d 200, 202 (Fla. 2d DCA 2006) (stating that "in order to declare a child dependent, the parent's harmful behavior must pose a present threat to the child based on current circumstances." (quoting *In re K.B.,* 937 So. 2d 709, 711 (Fla. 2d DCA 2006))); *C.R. v. Dep't of Children & Families*, 45 So. 3d 988, 989 (Fla. 3d DCA 2010) (finding no "risk of present or future harm to the child" based on "parents' history of domestic violence," where parents had separated and "a permanent court injunction [had been] entered to prevent any contact between the parents").

We recognize that a determination of a child's status as dependent should be made independent of his motivations for seeking that status. *See F.L.M. v. Dep't of Children & Families,* 912 So. 2d 1264, 1269 (Fla. 4th DCA 2005) ("[I]f a child qualifies for a declaration of dependency under our statutes, the child's motivation to obtain legal residency . . . is irrelevant."). In other words, a child who meets the requirements for dependency is

6

entitled under law to claim preferred immigration status. However, we also have taken note of the fact that judicial resources too often are being misused to obtain dependency orders for minors who are neither abused, neglected or abandoned, and who seek a dependency adjudication and best-interest order not because they are endangered and need protection but because they want preferential immigration treatment without having to comply with the requirements of the customary legal immigration process.

To illustrate this point, the facts of this case were compared to the situation presented in *F.L.M.* There, we ruled that a child seeking an adjudication of dependency in order to obtain legal residency status qualified as dependent under chapter 39 because he was orphaned at age 10, traveled to the United States four years later, and never had a custodian appointed by a legal authority. *Id.* at 1268-70. Unlike the petitioner in *F.L.M.*, the Child in the instant case currently resides with his uncle with the full permission of his mother, in addition to the fact that he has not been abused, neglected or abandoned under any definition in chapter 39. The distinction presented between the child in *F.L.M.* and the Child in this case is important, for *F.L.M.* provides an example of the type of situation that the law was intended to be used for; namely, the protection of children whose circumstances are such that they have need for dependent status, and who are rightfully entitled to the benefits afforded to them by the SIJS process.

With no clear direction from the legislature and the courts on this issue, the statutes as worded presented a situation ripe for potential misuse. While this court is sympathetic to the plight of alien minors seeking the opportunity of a better life in the United States, the role of the trial judge is not to set immigration policy or to decide whether, as a humanitarian gesture, any particular alien minor should be permitted to stay in the United States. To that end, we caution trial courts that these petitions, acting as "unopposed request[s]," *Y.C.*, 82 So. 3d at 1142, should be considered carefully and not simply decided for the sake of expediency or sympathy.

When faced with these one-sided private petitions, judges are reminded that they are not required to accede to such requests for dependency merely because no countervailing position is taken by an opposing party, or because no evidence is submitted in direct rebuttal to the allegations made. A trial court would be derelict in its duty as fact-finder if it were to blithely accept a petitioner's unilateral presentation without any critical review. While a court should indeed provide protected status to those

7

deserving minors, it should also not turn a blind eye to inconsistencies apparent from both the pleadings and the evidence, or to situations that seem to defy logic or common sense such as conveniently-timed admissions by parents to inflicting abuse, neglect or abandonment upon their child. This is especially true when such admissions lack any real threat of consequence for the person making those averments.

To proceed otherwise would be tantamount to the court abdicating its responsibility to evaluate the credibility of witnesses and properly reject evidence that under the totality of the circumstances appears at best improbable, or at worst, manufactured. In many of these cases, the evidence consists almost entirely of testimony by parties and other witnesses recalling occurrences that are remote in time, vague in specifics, and with scant corroboration or verification. It is precisely under these circumstances that judges should use the most caution to avoid being nothing more than a "rubber-stamp" by routinely granting these requests. "Judges . . . are not wallflowers or potted plants," and a trial court is not required to accept testimony that is clearly incredible or unreliable. *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) (Posner, J.).

For these reasons, the order denying the petition for dependency is affirmed.

*Affirmed.*

CIKLIN, C.J., concurs.
FORST, J., dissents with opinion.

FORST, J., dissenting.

The majority opinion is rooted in a perceived frustration on the part of both appellate and trial courts with these types of dependency cases. For the most part, I concur with the majority opinion's analysis and conclusions. However, that opinion fails to adequately address one of the issues presented in this specific case. Here, the petitioner on behalf of the Child presented evidence of a prima facie case of dependency under section 39.01(15)(e), Florida Statutes (2014). The trial court failed to address this specific provision in its decision, and so I would have remanded for a determination as to this claim. On the record before this court, I cannot affirm the trial court's decision. As such, I respectfully dissent.

The petition filed on behalf of the Child alleges that he was forced to leave his home by his mother when he turned seventeen years old. When trying to illegally immigrate to the United States, the Child was picked up by immigration officials and later released to his uncle's care in Palm Beach County.

Less than ten months later, about two and a half months before the Child's eighteenth birthday, a private petition for adjudication of dependency was filed on his behalf. The petition alleged the Child's father abandoned him before birth and that his mother had been neglecting him since he was twelve years old because she could not sufficiently provide him food and clothing. The petition sought a declaration of dependency on two grounds: (1) the mother had abandoned the Child because she kicked him out of her home when he turned seventeen years old pursuant to section 39.01(15)(a), and (2) the Child is without a "parent or legal custodians capable of providing supervision and care" pursuant to section 39.01(15)(e).

An evidentiary hearing was held before the trial court on the petition. The Child and his uncle were present and sworn in to testify. The Child testified about his background and that he lived in Guatemala with his mother and grandmother, but his mother kicked him out of the home when he turned seventeen years old because there was not enough food or water. The Child currently is living with his uncle and going to school. That was all the testimony that was taken. No other evidence was presented, and the Child was not questioned as to the details of the Child being "kicked out" or how he financed his trip to the United States.

In a two-page final order denying the petition, the trial court presented the facts as found in the petition and from the Child's testimony, nowhere indicating that his testimony or averments set forth in the petition were rejected or found not credible. The trial court correctly asserted, citing case law from this Court, that the Child's motivations for seeking an adjudication of dependency are not to be considered. *See F.L.M. v. Dep't of Children & Families*, 912 So. 2d 1264, 1269 (Fla. 4th DCA 2005). The trial court next analyzed other case law from this Court regarding whether the Child meets the statutory definition of abandonment. In concluding that the Child does not meet the definition of abandonment, the trial court emphasized that the Child was not abandoned because he "is residing with his Uncle, against whom there are no allegations of abandonment, abuse, or neglect." The trial court made no findings that the uncle is the Child's "legal custodian," and it failed to address the petition's other grounds for dependency found in section 39.01(15)(e)—that the Child is without a

9

parent or legal custodian capable of providing supervision and care. Similarly, the one case relied upon by the trial court in reaching its decision, *S.H. v. Dep't of Children & Families*, 880 So. 2d 1279 (Fla. 4th DCA 2004), does not address section 39.01(15)(e).

The majority opinion notes that, "[a]bsent from [the] definition [of a 'dependent child'] is a requirement that the alleged abuse or neglect occur within a specified period of time prior to the filing of the petition." However, in the instant case, while the petition explains that the Child allegedly was neglected by his mother beginning when he was twelve years old, the grounds for dependency relied upon in the petition were for events occurring, at most, ten months before the petition came before the trial court, and not for the alleged neglect of his earlier childhood. The Child alleges abandonment upon his mother forcing him to leave her home when he turned seventeen years old, and then the petition was heard before the court two and a half months before the Child's eighteenth birthday. Additionally, the other grounds alleged that the Child is currently without a parent or legal custodian capable of providing supervision and care. Contrary to the majority's example, this is far from being a situation where there is an isolated incident of abuse occurring fifteen years ago, and a reversal of this case would not require this court "to employ such an expansive interpretation and rote application of section 39.01(15)(a)."

On the case's merits, I agree with the majority that the Child is not abandoned where the uncle qualifies as a caregiver by virtue of the immigration authorities releasing him to the uncle and there are no allegations of abuse, abandonment, or neglect by the uncle. *See* § 39.01(1), (10), (47), Fla. Stat. However, where I diverge from the majority's line of thinking is the notion that, because the uncle (who was neither a parent nor "legal custodian" of the Child) is capable of providing supervision and care to the Child, there is no need to address dependency under section 39.01(15)(e). Although the majority opinion does recognize section 39.01(15)(e) as a basis for finding dependency, it fails to recognize it as the independent basis that it is. *See In re Y.V.*, 160 So. 3d 576, 578 (Fla. 1st DCA 2015). Section 39.01(15)(e) specifically provides that a child is "dependent" upon a finding that the child has "no parent or legal custodians capable of providing supervision and care." § 39.019(15)(e), Fla. Stat. As mentioned above, the trial court made no finding that the uncle is a "legal custodian," which involves a legal status conveyed by a court, § 39.01(34), Fla. Stat., and therefore the uncle's care for the Child would not automatically rule out a finding of dependency under section 39.01(15)(e), contrary to what the majority suggests with its creation of a

"presumption" upon a finding of no abandonment, abuse, or neglect by the "caregiver" (in this case, the Child's uncle).

Therefore, as no legal father has been established, the logical analysis would be focused on whether the Child's mother is capable of providing supervision and care. This issue was raised in the petition, but not addressed by the trial court or the majority opinion. The limited evidence presented to the trial court establishes that she is not. While the mother may be capable of supervision, the fact, established by the testimony of the Child, that she was not able to provide food and water to the Child is evidence of the mother's demonstrated lack of capability to care for the Child. The majority opinion fails to acknowledge this unrebutted allegation. A finding of dependency under section 39.01(15)(e) has previously been found under circumstances where a mother could not financially provide basic necessities for a child, such as food and water. *See C.D. v. Dep't of Children & Families*, 816 So. 2d 1229, 1230 (Fla. 5th DCA 2002). Additionally, there was no evidence presented in the instant case that the mother otherwise provided for the care of the Child by giving her "full permission" to the uncle to care for him, as the majority opinion asserts. As such, with his testimony, the Child established a prima facie case for dependency under section 39.01(15)(e). *See In re Y.V.*, 160 So. 3d at 579 (concluding that a prima facie case under section 39.01(15)(e) is possible even with a child who has "locatable, living parents" and "a responsible adult [who is not a parent or legal custodian] is caring for him on a voluntary basis").

In light of this prima facie case, the trial court is in the position to act as the fact-finder, make decisions to accept or reject testimony, and then make its ruling. The final order of the trial court in this case does not show that the trial court rejected the Child's testimony, but rather that the court found no basis for dependency even in light of accepting the Child's testimony because of the uncle caring for the Child and having no allegations of abuse, abandonment, or neglect against him. As mentioned above, the trial court simply failed to address the other basis for dependency—section 39.01(15)(e)—where the prima facie case existed.

I agree with the majority opinion that judges should "avoid being nothing more than a 'rubber-stamp'" in either routinely granting or, as in the case at hand, denying these requests. Perhaps the Child's testimony was "clearly incredible or unreliable." However, the trial court did not reject this testimony, and the Child's testimony establishes the prima facie case. Thus, the proper course of action is either a reversal or, at least, a remand for the trial court to specifically address section 39.01(15)(e). As

11

the record as developed below does not support affirmance with respect to this ground for dependency set forth in that subsection, I respectfully dissent.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***