SHEPHERD, J.
concurring.
I concur in the decision of the majórity and write only to emphasize that there are two separate and independent reasons to affirm the decision of the trial court in this case. First, as we have held in similar eases, the petition in this case fails on state law grounds. See In re B.R.G.M., No. 3D15-962, 2015 WL 9584743 (Fla. 3d DCA Dec. 30, 2015); In re B.Y.G.M., 176 So.3d 290 (Fla. 3d DCA 2015); In re K.B.L.V., 176 So.3d 297 (Fla. 3d DCA 2015); see also O.I.G.L, v. Dep’t of Children & Families, 169 So.3d 1244 (Fla. 4th DCA 2015). However, the opinion of the court today reveals yet a second reason, and one arguably of a higher, order, for-the affirmance of the trial.court’s decision in such cases, namely that those who seek to stretch state dependency laws for the sole purpose of obtaining lawful residency, as opposed to relief from abuse, neglect or abandonment, are fostering outcomes which are inconsistent with the laws and policies of our National Government. It is on this sepárate ground I'vrish to briefly comment. .. .
The creation of the Special- Immigrant Juvenile (SIJ) classification to assist certain children from foreign countries in seeking lawful residency in the United States was added to the United States Immigration and Naturalization Act (INA) in 1990.[2] See Immigration Act of 1990, Pub. L. 101-649, ch. I, sec. 153, 104 Stat. 4978 (adding subsection (J) to ,8 U.S.C. § 1101(a)(27)). The original eligibility requirements for SIJ status were a court order determining that the juvenile alien was dependent oh a juvenile court, and a judicial or administrative order that' it would not be in the juvenile’s best interest to be returned to the juvenile’s home country.[3] However, because of perceived abus *906 es of the SIJ classification discovered after its enactment in 1990, primarily its use -as a method of obtaining legal permanent status, rather than for the more limited purpose of obtaining relief from abuse, abandonment or neglect, see Yeboah v. U.S. Dep’t of Justice, 345 F.3d 216, 221 (3d Cir.2003); M.B. v. Quarantillo, 301 F.3d 109, 114 (3d Cir.2002), Congress amended section 1101(a)(27)(J) in 1997 to specify that in addition to being dependent upon a state juvenile court as eligible for long-term foster care, those eligible for SIJ status must also demonstrate their dependency on the state was “due to abuse, neglect or abandonment.”[4] CJS 1998 Appropriations Act, Pub. L. No. 105-119, ch. I, sec. 113, 111 U.S. Stat. 2440, 2460.[5] If there was any question prior to the enactment of Public Law 105-119 that a “qualifying” state court dependency order had to be based on a finding of abandonment, abuse or neglect, the 1997 amendments to section 1101(a)(27)(J) operated to dispel the doubt. As a Congressional Report accompanying the proposed amendments stated:
Sec. 113-The conference agreement includes section 113, similar to language included in the Senate bill, that amends the Immigration and Nationality Act to address several problems encountered in the implementation of the special immigrant juvenile provision. The language has been modified in order to limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected, or abused children, by requiring the Attorney General to determine that nei *907 ther the dependency order nor the administrative or judicial determination of the alien’s best interest was sought primarily for the purpose of obtaining the status of an alien lawfully admitted for. permanent resident, rather than for the purpose of obtaining relief from abuse or neglect. The conferees intend that the involvement of the Attorney General is for, the purposes of determining special immigrant juvenile status and not for making determinations of dependency status. In addition, in order to preclude State juvenile courts from issuing dependency orders for juveniles in actual or constructive custody of the INS, the modified provision removes jurisdiction from juvenile courts to consider the . custody status or placement of such aliens unless the Attorney General specifically consents to such jurisdiction. The House bill did not contain a provision on this matter.
H.R. Rep. 105-405, at" 130 (1997) (emphasis added).
In 2008, Congress amended the definition of a SIJ under section 1101(a)(27)(J) in two respects pertinent to this discussion. See William Wilberforce Trafficking Victims Protection Reauthorization Act, Pub. L. No. 110-457, 122 U.S. Stat. 5044 (2008). The requirement that the SIJ applicant be deemed eligible “for long-term foster care” -by a state court was- removed. Additionally, the SIJ applicant now needed to establish that reunification was not viable with “one or both parents.” Id. at sec. 235(d)(1). However, the demonstration by the juvenile petitioner of “abuse, neglect or abandonment ... under State law” remained as an important prerequisite to attainment of SIJ status.[6]
It is axiomatic that “[t]he authority to control'immigration — to admit- or exclude aliens — is vested solely in the- Federal Government.” Truax v. Raich, 239 U.S. 33, 42, 36 S.Ct. 7, 60 L.Ed. 131 (1915); see also Galvan v. Press, 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954) (recognizing that formulation of “[policies pertaining to the entry of aliens and their right to remain here” are “entrusted exclusively to Congress”). This authority, of course, derives from our federal constitution. Art. I, SI. 8, U.S. Const. (“The Congress shall have Power ... To establish an uniform Rule of Naturalization_”). Pursuant to this authority, the United States Congress created a specific classification of juveniles, the SIJ classification, for the purpose of *908 assisting a limited group of children from foreign countries, who have been “abuse[d], neglect[ed] or abandon[ed]” under. state law, in seeking lawful residence in the United:States.
S.A.R.D., and juveniles who are similarly situated, are neither abused, neglected nor abandoned under the law of this state. Instead, their petitions seek a declaration of dependency from our state family courts solely on the hope that the United States government ultimately will confer- lawful residency status upon them.[7] However, Florida courts are not empowered to promote or incent immigration outcomes in conflict-with the law and policies of our National Government. See Arizona v. U.S., - U.S. -, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012). For this additional reason, we correctly affirm the decision of the trial court in this case.[8]

. The INA was the first consolidated immigration legislation enacted in 1952. Prior thereto, immigration law was not organized into one cohesive code section. Immigration, and Nationality Act,, Pub.L. No. 82-4.14, 66 Stat. 163 (1952) (codified as 8 U.S.C. § 1158).

. As originally enacted, a SIJ was defined as:
*906 an immigrant (i) who has been declared dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care, and (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien’s best interest to-be returned to the alien’s or parent’s previous country of nationality or country of last habitual residence
Pub.L. 101-649, ch. I, sec. 153.

. Senator Pete Domenici of Arizona, one of the proponents of the proposed amendments to SIJ status, articulated the problem as follows: "[Tjhis is a giant loophole ... every visiting student from overseas can have a petition filed in a State court declaring that they are á ward and in need of foster care ... [and] they are granting them.” Attorney General Reviewing Potential Abuse of Immigration Law: Hearing on H.R. 2267 Before a Sub-comm. of the Comm, on Appropriations, 105th Cong. 1 (1997) (statement of Pete Domenici, U.S. Senator) (emphasis added).

. As amended in 1997, section 1101(a)(27)(J) defined a SIJ as:
(J) an immigrant who is present in the United States—
(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment;
(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien’s best interest to be returned to the alien's or parent’s previous country of nationality or country of last habitual residence; and
(iii) in whose case the Attorney General expressly consents to the dependency order serving ás a precondition to the grant of special immigrant juvenile status; except that
(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction; and
(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded the right, privilege or status under this Act;
Pub.L. 105-119, ch. I, sec. 113 (modifications bolded).

. Since the 2008 amendments, subsection 1101(a)(27)(J) reads:
(J) an immigrant who is present in the United States
(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or ' department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification 'with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
(ii)‘for whom it has been determined in administrative or judicial proceedings that it would not be in the alien’s best interest to be returned to the alien’s or parent’s previous country of nationality or country of last habitual residence; and
(iii)in whose cage the Secretary of Homeland Security, consents to the grant of special immigrant juvenile status, except that—
(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services- unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue, of such parentage, be accorded -any right, privilege, or status under this chapter;. ■ •
-8 U.S.C.A. § -1-101 (2010) (emphasis added).

; One commentator, an advocate for expansion of the SIJ immigrant class, has stated that once a petitioner is awarded SIJ status, the individual is automatically eligible to adjust to legal permanent resident status which, if granted,' makes a child eligible for a work permit, driver’s license, subsidized health insurance and financial aid for higher education, and, fiye years later, citizenship. See Shannon Aimee ‘Daugherty, Special Immigrant Juvenile Status: The Need to ' 'Expand Relief, 80 Brook.' L. Rev. 1087, 1088-89 (Spring 2015). In this context, it seems apparent that obtaining the required dependency order with the necessary findings constitutes the greatest hurdle to eventual naturalization for these juveniles. Id.

. Parenthetically, I must respectfully demur from the statement in the majority opinion that the Department of Children and Families previously declined to involve itself in these proceedings because the petitions were “private petitions." Maj, Op. at p. 901. As coun- . sel for the Pepartment admitted at oral argument in B.R.C.M., our opinion in B.Y.G.M., . 176 .So.3d at 290, coaxed the Department to , re-engage as a participant in these cases. I make the point only in the event the willingness of the Department to engage in appropriate participation in these cases must be called into question again at some future time.