LABARGA, C.J.,
dissenting.
Although O.I.C.L. has already reached majority age, “[i]t is well settled that mootness does not destroy an appellate court’s jurisdiction ... when the questions raised are of great public importance or are likely to recur.” Del Valle v. State, 80 So.3d 999, 1005 (Fla.2011) (quoting Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984)). The prevalence of seventeen-year-old unaccompanied minors seeking adjudications of dependency presents precisely the type of situation that is “capable of repetition, yet evading review.” Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 *580 (1973) (quoting S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911)). In these cases, if reaching majority age renders the case moot, dependency litigation will rarely survive much beyond the trial stage, and appellate review will be effectively denied.
In fiscal year 2015, an estimated 39,970 unaccompanied minors were apprehended at the border.[2] Approximately 2,908 of those children were released to sponsors in Florida.[3] This number increased in fiscal year 2016, with approximately 4,264 unaccompanied minors released to sponsors in Florida as of July 2016.[4] One of the common types of relief sought by these children is Special Immigrant Juvenile Status (SIJS), which allows unaccompanied minors to apply for lawful permanent residency in the United States. As noted by the majority opinion, “a state court’s adjudication of dependency or other custody determination is the first step in the process of [ ] obtaining SIJ status.” Majority op. at 578. See also In re Y.V., 160 So.3d 576, 580 (Fla. 1st DCA 2015). Notably, “[s]eventeen-year-olds are the most frequent SIJS applicants — from 1999 to 2012, the median age has hovered between seventeen and eighteen annually, with an overall median age of 17.4.” Lailah Hlass, States & Status: A Study of Geographical Disparities for Immigrant Youth, 46 Colum. Hum. Rts. L.Rev. 266, 290 (2014). This appears to be the most common age for various reasons:
First, the average age of unaccompanied minors entering the country is around sixteen or seventeen, and ... many of these youths are SIJS eligible. Further, for someone who has not been apprehended by the immigration agency, this is the age at which he may consider getting a driver’s license or taking college entrance tests. These events can trigger a realization that he is unauthorized, because he does not have the required identification. At this point, he may be more likely to seek help and get screened for eligibility. Lastly, age seventeen might be so common because many state laws lose jurisdiction over youths at age eighteen, so SIJS-eligible youths eighteen and older may not be able to obtain the predicate state court order and therefore never apply for federal immigration protection. These hypotheses are certainly not exhaustive, but they are reflective of the conventional understanding of child advocates.
Id. at 290-91 (footnotes omitted).
The Fourth District recognized that dependency petitions filed on behalf of unaccompanied minors have become increasingly common, observing that:
These types of petitions ... routinely share the following common elements: the child is about to turn eighteen years old; the Department of Children and Families (“DCF”) neither supports nor opposes the child’s petition; the child agrees not to seek any services from the State; one or more of the child’s parents sign consent forms agreeing to entry of a dependency order; no testimony is presented to the court opposing the petition; and, DCF files no briefs in any subsequent appeal. As courts are likely to continue encountering more of these *581 cases in the future, we believe some guidance on the proper handling of these cases is required.
O.I.C.L. v. Dep’t of Children & Families, 169 So.3d 1244, 1247 (Fla. 4th DCA 2015).
The frequency with which such dependency petitions are filed, and the failure of trial courts to make adequate factual findings — as occurred in this case — create a situation in which improper denials are likely to recur. Yet, with unaccompanied minors customarily filing petitions within a year or two of reaching eighteen, these cases are likely to evade review. Here, we have recognized that the Fourth District’s conclusion conflicts with the decisions of the First District in In re Y.V. and the Third District in In re T.J. Accordingly, I would address the question of law at issue and provide guidance on the proper handling of these cases.
What is more, I would not dismiss this case as moot because it is clear that the federal and state statutory schemes, which provide a pathway for unaccompanied minors to obtain lawful permanent residency via SIJS, allow for retention of jurisdiction. Although chapter 39 specifies that only a child may be found dependent, O.I.C.L. was a child at the time the dependency petition was filed and an appropriate adjudication by the trial court could havé resulted in the retention of jurisdiction over his dependency case.
The concurring in result opinion asserts that the retention of jurisdiction provided for in section 39.5075(6) does not apply when a private petition has been filed. This assertion confuses the statutory schemes laid out in title 8 U.S.C. § 1101(a)(27)(J), and section 39.5075, Florida Statutes. A private petition for an adjudication of dependency — like the one filed in this case — petitions a state court for a determination of dependency in the same manner as a petition filed by DCF or a community-based care provider. Dependency proceedings are commenced when a petition alleging- dependency is filed, and “[a]ll proceedings seeking an adjudication that a child is dependent shall be initiated by the filing of a petition by an attorney for the department, or any other person who has knowledge of the facts alleged or is informed of them and believes that they are true.” § 39.501(1), Fla. Stat. (emphasis added). See also Fla. R. Juv. P. 8.201(a)(2). It is only after a determination of dependency by the state court and a determination of eligibility for SIDS that “the department or community-based care provider shall petition the court for an order finding that the child meets the criteria for [SIDS].” § 39.5075(4), Fla. Stat. Thereafter, “the department or community-based care provider shall ... file a petition for [SIJS] and the application for adjustment of status to the appropriate federal authorities on behalf of the child.” § 39.5075(5), Fla. Stat. Additionally, the court may retain jurisdiction over a child’s dependency case until the child’s twenty-second birthday pending the disposition of the SIJS petition and application by federal immigration authorities. § 39.5075(6), Fla. Stat.
Accordingly, the fact that a private petition for adjudication of dependency was filed on behalf of O.I.C.L. is not dispositive of whether the state court may retain jurisdiction over his dependency case for the purpose of obtaining SIJS. The determining factor regarding retention of jurisdiction is whether the petition for SIJS and the application for adjustment of status were filed before he reached eighteen. For this reason, it is imperative to consider whether the trial court made an appropriate determination of dependency that would have qualified O.I.C.L. for SIJS before his eighteenth birthday.
*582 BACKGROUND
At the time this case arose, seventeen-year-old O.I.C.L. resided with his uncle who provided him with supervision and care on a voluntary basis. Nonetheless, a private petition for dependency was filed on behalf of O.I.C.L. alleging that he was dependent under sections 39.01(15)(a) and 39.01(15)(e) because he had “been abandoned ... by [his] parent or parents or legal custodians,” and had “no parent or legal custodians capable of providing supervision and care.” O.I.C.L., 169 So.3d at 1246. The petition asserted that OJ.C.L.’s father abandoned him before his birth, that his mother neglected him since he was twelve years old, and that his mother was unable to provide support as of the time he turned seventeen years old and forced him to leave the home. The trial court conducted a brief evidentiary hearing during which O.I.C.L. testified about these circumstances. DCF did not appear in the trial court proceeding or on appeal before the Fourth District, and O.I.C.L.’s allegations and testimony were riot contested.
After the evidentiary hearing, the trial court entered a final order denying the petition for dependency. The trial court found that the O.I.C.L. had been living with his uncle since being released to him by ORR.[5] Consequently, the trial court reasoned that O.I.C.L. was not dependent because he was cared for by a “ready, willing, and able relative” against whom there were no allegations of abandonment, abuse, or neglect.
On appeal, the Fourth District affirmed the denial of the petition. As noted by the majority opinion, the Fourth District explained that O.I.C.L. was released by ORR to his uncle, who qualified as a caregiver pursuant to section 39.01(10), Florida Statutes. Thus, the Fourth District concluded: “As there were no allegations of abandonment, abuse, or neglect against the uncle, a presumption arose that he was indeed ‘capable of providing [both] supervision and care’ to the Child.” Id. at 1248.
This Court subsequently granted review of the Fourth District’s decision based on express and direct conflict with In re Y.V. and In re T.J.
CONFLICT
In In re Y.V., the First District reversed the dismissal of a private petition for dependency filed on behalf of an unaccompanied minor who was being cared for by his uncle in Florida. 160 So.3d at 577. The petition alleged that Y.V. was a dependent child pursuant to sections 39.01(15)(a) and 39.01(15)(e) because he was abused and abandoned by his parents in Honduras and had no parent or legal custodian capable of providing supervision and care. Id. Yet the trial court dismissed the petition without a hearing. Id. at 578. In reversing the trial court’s decision, the district court reasoned that section 39.01(15) establishes seven independent grounds for adjudicating a child dependent and that the petition alleged sufficient facts. Id. Thus, the First District concluded that even though Y.V. had locatable, living parents in his country of origin and was being voluntarily cared for by an adult relative in Florida, the petition established a prima facie case for dependency. Id. at 579. Thus, the district court remanded the case for further proceedings. Id. at 581.
Similarly, in In re T.J., the Third District reversed the summary denial of a private petition for dependency filed on behalf of an unaccompanied minor who *583 was being voluntarily cared for by an aunt in Florida after her mother’s death. 59 So.3d at 1189. The petition alleged that T. J.’s father left her mother when the child was an infant, and the father’s whereabouts were unknown at the time the petition was filed. Id. The Third District determined that the petition established a prima facie case for dependency under section 39.01(15)(e) based on allegations that T.J.’s mother was deceased, her father had not been located after a diligent search, and her aunt did not have any judicially conferred status as a custodian or guardian. Id. at 1190. Accordingly, the district court remanded the case for further proceedings. Id. at 1194.
It is apparent from these cases that there is conflict regarding whether a district court is required to remand a case where the trial court failed to make adequate factual findings relating to each ground for dependency for which sufficient facts were alleged in the dependency petition. Accordingly, I would resolve the conflict presented here.
ANALYSIS
Section 39.01(15), Florida Statutes, provides seven independent grounds upon which a child may be adjudicated dependent. See § 39.01(15), Fla. Stat. See also In re Y.V., 160 So.3d at 578. Florida Rule of Juvenile Procedure 8.310(a)(1) requires that a dependency petition “allege sufficient facts showing the child to be dependent based upon applicable law.” “[W]hen a Florida court is presented with a dependency petition, the court’s concern should be whether the allegations made in support of an adjudication of dependency satisfy Florida’s statutory grounds for such an adjudication, not whether the juvenile hopes to obtain SIJ status.” In re Y.V., 160 So.3d at 581. Moreover, “[i]f federal law grants a right to alien children to regularize their immigration status by first obtaining a state court adjudication of dependency, then there is no basis for failing to declare a child dependent so long as he or she meets the statutory criteria for dependency.” F.L.M. v. Dep’t of Children & Families, 912 So.2d 1264, 1269 (Fla. 4th DCA 2005). Thus, when a petition establishes a prima facie case for dependency, it is the role of the trial judge to “act as the fact-finder, make decisions to aceept or reject testimony, and then make its ruling.” O.I.C.L., 169 So.3d at 1253 (Forst, J., dissenting).
Accordingly, when a petition alleges sufficient facts for dependency under any of the seven statutory grounds, the trial court must make factual findings as to each separate ground in order to properly determine whether a child is dependent. In this case, O.I.C.L.’s petition alleged facts presenting a prima facie case for dependency under section 39.01(15)(a) and the trial court appropriately considered whether O.I.C.L. was abandoned, abused, or neglected. The trial court found that O.I.C.L.’s uncle qualified as a caregiver and that there was no evidence that O.I.C.L. was abandoned, abused, or neglected by his caregiver. However, the trial court failed to address O.I.C.L.’s dependency under section 39.01 (15)(e), despite the petition alleging sufficient facts.
To properly determine O.I.C.L.’s dependency under section 39.01(15)(e), the trial court must examine whether he had a parent or legal custodian capable of providing supervision and care. As evidenced by the petition and O.I.C.L.’s testimony, his father was unknown, his mother was unable to provide him with basic necessities and support, and he was forced to leave the home.[6] The trial court failed to in *584 quire further about the mother’s capability of providing supervision and care in light of these allegations and, despite the Fourth District’s assumption, there was no evidence that the mother granted permission for O.I.C.L. to reside with his uncle. Furthermore, the trial court made no findings about whether the uncle was O.I.C.L.’s legal custodian which, pursuant to section 39.01(34), entails a legal status that is determined by a court. “[Tjhere-fore the uncle’s care for the Child would not automatically rule out a finding of dependency under section 39.01(15)(e).” O.I.C.L., 169 So.3d at 1252 (Forst, J., dissenting). Although the uncle qualified as a caregiver and provided O.I.C.L. with supervision and care, these facts alone do not create a presumption that O.I.C.L. had a parent or legal custodian capable of providing supervision and care.
The trial court in this case did not apply the correct law when it failed to make any factual findings about whether O.I.C.L. had a parent or legal custodian capable of providing supervision and care. Moreover, the trial court ruling is not supported by competent substantial evidence because the testimony from O.I.C.L. and his uncle did not establish that O.I.C.L. had a parent or legal custodian capable of providing supervision and care. Thus, the trial court’s denial of the dependency petition with regard to section 39.01(15)(e) cannot be sustained. See C.A. v. Dep’t of Children and Families, 958 So.2d 554, 557 (Fla. 4th DCA (2007)) (“A court’s final ruling of dependency ,., will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record.... reversal is required where the evidence is legally insufficient to sustain the findings of the trial court.”). See also C.R. v. Dep’t of Children & Family Servs., 53 So.3d 240, 242 (Fla. 3d DCA 2010); G.C. v. Dep’t of Children & Families, 791 So.2d 17, 19 (Fla. 5th DCA 2001). Accordingly, the Fourth District should have remanded this case for further proceedings.
The conflict of decisions presented here and the apparent need for guidance in the lower courts merit a suitable resolution by this Court. Accordingly, I dissent from the majority’s opinion that this case is moot, and would quash the Fourth District’s decision and remand this case for an adequate evidentiary hearing.
PARIENTE and PERRY, JJ., concur.

.Southwest Border Unaccompanied Alien Children (0-17 yr old) Apprehensions, U.S. CUSTOMS & BORDER PATROL, https:// www.cbp.gov/newsroom/stats/southwest-border-unaccompanied-children/fy-2016 (last visited July 11, 2016).

. Unaccompanied Children Released to Sponsors by State, OFFICE OF REFUGEE RESETTLEMENT (August 25, 2016), http://www.acf. hhs.gov/programs/orr/programs/ucs/state-by-state-uc-placed-sponsors.

. See note 2, supra.

. Notably, while the petition alleged and the trial court found that ORR released O.I.C.L. to the care and custody of his uncle, Rigoberto Castro Lopez, the record before this Court identifies O.I.C.L.’s sponsor as Mario Lopez Castro, his first cousin.

. See C.D. v. Dep't of Children & Families, 816 So.2d 1229, 1230 (Fla. 5th DCA 2002) (in *584 which a child was found dependent pursuant to section 39.01(15)(e) because the mother was financially unable to provide basic necessities, such as food and water).