# Third District Court of Appeal

## State of Florida

Opinion filed July 20, 2016.

_____

No. 3D15-546
Lower Tribunal No. 15-15127
_____

**In the Interest of:
F.J.G.M., a minor child,**
Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Cindy S. Lederman, Judge.

Law Office of Liza R. Galindo, P.A., and Liza R. Galindo, for appellant.

Before ROTHENBERG, SALTER, and EMAS, JJ.

On Motion for Rehearing and Request for Written Opinion

ROTHENBERG, J.

Upon F.J.G.M.'s motion for rehearing and request for a written opinion, we

deny F.J.G.M.'s motion for rehearing. We, however, grant F.J.G.M.'s request for

a written opinion; withdraw this Court's August 12, 2015 per curiam opinion citing to In re K.B.L.V., 176 So. 3d 297 (Fla. 3d DCA 2015), and In re B.Y.G.M., 176 So. 3d 290 (Fla. 3d DCA 2015), and affirming the trial court's order denying F.J.G.M.'s private dependency petition; and issue the following opinion in its stead.

On or about February 2, 2015, Cenia Yaquelin Guifarro, F.J.G.M.'s mother ("the mother" or "his mother"), who resides in Miami, Florida, filed a private petition, seeking an adjudication finding her minor son, F.J.G.M., dependent as defined in section 39.01(15) of the Florida Statutes. If adjudicated dependent, F.J.G.M. becomes eligible for a Special Immigrant Juvenile ("SIJ") status visa under 8 U.S.C. § 1101(a)(27)(J) of the Immigration and Nationality Act, and ultimately to obtain permanent immigration status in this country. The petition is based solely on abandonment by F.J.G.M.'s father since F.J.G.M.'s birth in 2003, and the threat that if F.J.G.M.'s petition were denied, he would be deported back to Honduras. The trial court summarily denied the mother's private petition for adjudication of dependency. We affirm because abandonment by the man the mother claims is F.J.G.M.'s father is too remote, see In re S.A.R.D., 182 So. 3d 897, 902-03 (Fla. 3d DCA 2016); In re K.B.L.V., 176 So. 3d at 299; In re B.Y.G.M., 176 So. 3d at 293; and there is no claim that F.J.G.M. was abandoned, abused, or neglected by his mother.

2

Based on the petition and a sworn affidavit, it is alleged that F.J.G.M. was born in Honduras on February 1, 2003. At the time of F.J.G.M.'s birth, his mother was not married, no man was named as F.J.G.M.'s father on his birth certificate, and his mother did not name any man as F.J.G.M.'s father when she applied for public assistance. F.J.G.M.'s mother has stated that she believes that Alexis Escobar ("Escobar") is the probable father, and Escobar has acknowledged paternity during these dependency proceedings.

When F.J.G.M. was two years old, he and his mother began living with his mother's good friend, Seydi Cayo. In 2005, his mother left F.J.G.M. in the care of Ms. Cayo, and his mother went to the United States to obtain work to support F.J.G.M. The record does not reflect whether F.J.G.M.'s mother entered the United States legally or illegally, however, she acknowledges that she has always maintained a close and meaningful relationship with F.J.G.M. She called him regularly and regularly sent him money in order to support his needs. F.J.G.M. lived with and was cared for by Ms. Cayo until he left Honduras and illegally entered the United States on July 1, 2013 through the Texas border. F.J.G.M. was subsequently released to his mother by the Office of Refugee Resettlement. F.J.G.M. continues to live with and is being cared for by his mother and there is no allegation or evidence that she has ever abandoned, abused, or neglected F.J.G.M.

3

The mother merely wants her son to live with her in the United States, and F.J.G.M. wants to remain in the United States.

## ANALYSIS

### A. The Immigration Act

The Immigration Act of 1990 ("the Act") created a category of "special immigrants" who are entitled to obtain permanent immigration status in this country. 8 U.S.C. § 1101(a)(27). One such category is for undocumented/illegal youths who are under the protection of a state juvenile, family, or probate court. Id. at § 1101(a)(27)(J). To qualify for an SIJ visa, the minor must be a juvenile immigrant who is present in the United States, and

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, **and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law**;
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status[.]

Id. (emphasis added).

"The SIJ provisions of [the Act] were enacted in 1990 to protect abused, neglected, or abandoned children who, with their families, illegally entered the

4

United States." Yeboah v. United States Dep't of Justice, 345 F.3d 216, 221 (3d Cir. 2003). "Rather than being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States, such children may seek special status to remain in the United States." Id.

In 2008, Congress eliminated the requirement that the child be eligible for long-term foster care, see 8 U.S.C. § 1101(a)(27)(J)(i), and added language requiring the inability of the child to be reunited with "1 or both" parents because of "abuse, neglect, abandonment, or a similar basis" under state law. Id.

Thus, the procedure for obtaining SIJ status is a two-step procedure. First, the child must petition a state juvenile court to obtain an order finding that the child has satisfied certain state dependency criteria. This order is a predicate before a child can submit his or her application for SIJ status. The juvenile court does not make an immigration determination. In re Marcelina M.-G. v. Israel S., 112 A.D. 3d 100, 109 (N.Y. App. Div. 2013). If the child obtains an order from a state juvenile court finding him dependent and the juvenile court issues a best interest order, he can then apply for SIJ status, which, if obtained, will permit the child to apply for adjustment of status under 8 U.S.C. § 1255 in an effort to obtain legal permanent residency and, eventually, United States citizenship. 8 U.S.C. § 1255.

As the Third Circuit Court of Appeals noted in M.B. v. Quarantillo, 301

5

F.3d 109, 114 (3d Cir. 2002), "[b]eing granted such status is, of course, quite advantageous to an alien." For example, SIJ status provides exemption from deportation on certain grounds, including being present in the United States illegally. 8 U.S.C. § 1227(a)(1)(B-C). A juvenile granted SIJ status is deemed "to have been paroled into the United States" for purposes of discretionary adjustment of his status "to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a), (h)(1), and certain grounds of inadmissibility do not apply (including unlawful entry into the United States), and other grounds may be waived by the Attorney General. 8 U.S.C. § 1255(h)(2); 8 U.S.C. § 1182. As is obviously apparent, obtaining an order of dependency and SIJ status allows the child who entered the United States or stayed in the United States illegally to jump to the front of the line ahead of those who are attempting to immigrate to the United States lawfully and permits the child to bypass many of the requirements established for regular legal immigration.

The instant petition, like so many, is an attempt to expand the stated purpose of the Act. As stated earlier, "[t]he SIJ provisions of [the Act] were enacted in 1990 to protect abused, neglected, or abandoned children who, **with their families, illegally entered the United States.**" Yeboah, 345 F.3d at 221 (emphasis added). These provisions allow such children to seek SIJ special status to remain in this country "[r]ather than being **deported along with the abusive or neglectful**

6

**parents,** or deported to parents who had abandoned them once in the United States." Id. (emphasis added).  The purpose of the Act is not to provide exemption from deportation to children who forgo legal immigration migration to the United States and illegally enter the United States in search of a better life or to be reunited with a family member who came to the United States legally or illegally.

As this Court noted in In re S.A.R.D., this attempt to expand the stated purpose of the Act not only encourages illegal immigration,[1]  it places a very difficult burden upon the state courts tasked with reviewing these private dependency petitions and making dependency determinations.  In re S.A.R.D., 182 So. 3d at 901.

**B. Chapter 39**

The instant petition was filed under Chapter 39 of the Florida Statutes, which pertains to proceedings relating to children.  Chapter 39 defines a dependent child, in part, as one who has been "abandoned, abused, or neglected by the child's parent or parents or legal guardians." § 39.01(15)(a), Fla. Stat. (2015).  Because the petition was filed as a private petition with no services being sought, the

---

[1] Those who are closer to the immigration problem than this Court have observed that, in recent times, the SIJ law has resulted in the placement of children at great risk of assault, rape, kidnapping, and death as they are being smuggled into the United States.  See U.S. v. Nava-Martinez, 2013 WL 8844097 *4 (S.D. Texas 2013).  Worse yet, "[drug] cartels control the entire process." Id.  The Courts of this State should be loath to favor the expansion of any law that puts children at great risk of assault, rape, kidnapping, and death as they are being smuggled into the United States.

Department of Children and Families ("DCF") declined to appear. DCF is now appearing in these cases.

After review, the trial court summarily denied the petition. Before addressing the merits, we take this opportunity to respond to the dissent. In the instant case on rehearing, and in In re B.R.C.M., 182 So. 3d 749 (Fla. 3d DCA 2015), Judge Salter has dissented from this Court's affirmance of the trial court's orders declining to find the minor child dependent based on the trial court's failure to conduct an evidentiary hearing and to make specific findings of fact. From a procedural standpoint, we note that the failure to conduct an evidentiary hearing below has not been preserved for appellate review. No objection was raised in the trial court, and in fact, the issue has not been raised by the appellant either on direct appeal or in his motions for rehearing and rehearing en banc. On the merits, while we conceptually agree that an evidentiary hearing may be necessary in some cases, we conclude that no evidentiary hearing was needed in this case because the mother's petition and affidavit failed to state a sufficient legal basis for the relief sought. We also agree that orders which include specific factual findings and legal conclusions will generally assist this Court with our review and in some cases may be necessary. Although, we do not find that such an order was required in the instant case because there were no factual issues in dispute and, based on the alleged facts, F.J.G.M. is not a "dependent" child as defined in section

8

39.01(15)(a), we strongly urge trial courts to issue such orders in the future.

**C. Abandonment by F.J.G.M.'s father**

The instant petition seeking an adjudication of dependency is based solely on abandonment by F.J.G.M.'s father. There is no claim nor evidence of abandonment, abuse, or neglect by the mother. In fact, the evidence establishes the opposite.

Section 39.01(1), Florida Statutes (2015), defines "abandonment" as:

> [A] situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver, while being able, has made no significant contribution to the child's care and maintenance or has failed to establish or maintain a substantial and positive relationship with the child, or both.

Although Escobar has acknowledged paternity and it is undisputed that he abandoned F.J.G.M. since his birth in 2003, we conclude, as this Court has previously concluded in other cases, that abandonment by Escobar over thirteen years ago is too remote to serve as a basis for dependency, especially since the mother has continued to support F.J.G.M., ensured that he was cared for in Honduras, and presently supports and cares for F.J.G.M. in the United States. See In re S.A.R.D., 180 So. 3d at 903 (finding that abandonment by the father ten years before S.A.R.D.'s departure for the United States was too remote); In re K.B.L.V., 176 So. 3d at 299 (finding that the abandonment of the seventeen-year-old child by his father since he was eight months old was too remote).

9

F.J.G.M. was also not at a substantial risk of imminent abuse, abandonment, or neglect when his mother filed the petition. When the petition was filed, F.J.G.M. was living with and being cared for by his mother in Miami. There are no allegations that F.J.G.M. has been abandoned, abused, or neglected by his mother or that he is in substantial risk of abuse, neglect, or abandonment by his mother.

Because abandonment by F.J.G.M.'s father is too remote and there was no evidence presented that there is a substantial risk of abuse, neglect, or abandonment by F.J.G.M.'s mother, we conclude that the trial court correctly denied the petition on the basis of abandonment by the father. There clearly is not a substantial risk of abuse, neglect, or abandonment by F.J.G.M.'s mother while F.J.G.M. lives in the United States as he has been placed with his mother who is supporting and caring for him. There was also no evidence introduced that there exists a substantial risk of abuse, neglect, or abandonment by his mother if F.J.G.M. is deported back to Honduras as the evidence reflects that, although F.J.G.M.'s mother has lived in the United States since 2005, she maintained a close relationship with F.J.G.M. throughout, called him regularly and paid for his care and support.

## CONCLUSION

The allegations and supporting affidavit in this case failed to establish

10

abandonment as defined in section 39.01(1). The trial court, therefore, did not err by failing to conduct an evidentiary hearing, and it properly summarily denied the petition for dependency. Even if Escobar is F.J.G.M.'s father, abandonment by Escobar thirteen years ago is too remote. More importantly, F.J.G.M. has not been abandoned, neglected, or abused by his mother and there is no imminent substantial risk that she will do so in the future. Although F.J.G.M. does not meet Florida's dependency criteria, which may preclude a finding under the Act that he qualifies for SIJ status, and which may have allowed F.J.G.M. to jump to the front of the line and ahead of those who are attempting to immigrate to the United States lawfully, whether F.J.G.M. is ultimately permitted to remain in the United States is a determination entrusted exclusively to Congress. We and the trial courts can only perform the tasks assigned to us in a consistent and lawful manner.

Affirmed.

Emas, J., concurs in result.

SALTER, J. (dissenting from written opinion and from denial of the motions for rehearing and rehearing en banc).

I respectfully dissent from the majority's written opinion, and from the denial of the appellant's motion for rehearing and rehearing en banc.

This appeal from the summary denial of a twelve-year-old immigrant juvenile's "private petition" for dependency was decided without oral argument. Our per curiam affirmance with citations to two recent decisions of this Court[2] was issued days before the Supreme Court of New Jersey issued what is, in my view, a comprehensive and balanced opinion addressing the important issues in these "special immigrant juvenile" (SIJ) cases. See H.S.P. v. J.K., 121 A.3d 849 (N.J. 2015). Other states have also issued thoughtful opinions on the unique issues

---

[2] In re B.Y.G.M., 176 So. 3d 290 (Fla. 3d DCA 2015); In re K.B.L.V., 176 So. 3d 297 (Fla. 3d DCA 2015).

posed when federal immigration policies intersect with state dependency criteria and procedures in SIJ cases.[3]

While I joined in the citation per curiam affirmance initially, I am now persuaded that F.J.G.M.'s sworn petition has alleged a prima facie case that should not be summarily denied in the circuit court and then affirmed, as here, on the basis of the two decisions that involved different claimants, claims, and appellate records. In addition to the helpful decision in H.S.P., recent decisions by other Florida District Courts of Appeal are in conflict on these issues, and this apparently prompted the Supreme Court of Florida to accept review in the SIJ case of O.I.C.L. v. Department of Children & Families, 169 So. 3d 1244 (Fla. 4th DCA 2015), review granted, No. SC15-1570 (Fla. Oct. 30, 2015) (oral argument heard Feb. 2, 2016).

The recent motions for rehearing and rehearing en banc in this and other SIJ cases have also raised an important, unsettled legal issue that has arisen in such cases: is the abandonment of a child by a parent for many years subject to the same "remoteness in time" analysis that Florida courts have applied to temporally remote acts of abuse or neglect? Our decision in In re K.B.L.V., 176 So. 3d 297 (Fla. 3d DCA 2015), stated:

---

[3] See, e.g., In re Estate of Nina L. ex rel. Howerton, 41 N.E.3d 930 (Ill. App. Ct. 2015); Simbaina v. Bunay, 109 A.3d 191 (Md. Ct. Spec. App. 2015).

> In the absence of a continuing threat of harm, however, incidents of alleged abuse found too remote in time will generally not support a dependency adjudication. See, e.g., In re K.V., 939 So. 2d 200, 202 (Fla. 2d DCA 2006) (where instances of domestic violence in the presence of the child were too remote in time to support an adjudication of dependency); B.C. v. Dep't of Children & Families, 846 So. 2d 1273, 1274 (Fla. 4th DCA 2003) (stating that "[i]n order to support an adjudication of dependency, the parents' harmful behavior must be a present threat to the child").

Id. at 299 (alteration in original).[4]

In the cited cases, however, the acts alleged to warrant an adjudication of dependency were acts of domestic violence alleged to constitute "abuse," not the act of abandonment. In In re K.V., the father was alleged to have engaged in domestic violence and abuse against the grandmother. 939 So. 2d at 201. In B.C., two instances of domestic violence between the father and his former wife that had occurred two years before the petition for dependency was filed were found insufficient to constitute "imminent" harm to the child. 846 So. 2d at 1276. I can find no Florida case holding that long-term abandonment by a parent for many years is too remote for consideration as a danger and imminent harm to a child, or that, as a matter of law, long-term abandonment cannot support an adjudication of dependency with respect to the abandoning parent.

---

[4] This Court's decision in In re B.Y.G.M., decided the same day, also cited the same two cases for the "too remote to serve as a basis for dependency" conclusion. 176 So. 3d at 293.

14

Another important change in the treatment of SIJ petitions has occurred as a result of the Department of Children and Families' (DCF's) decision to review the petitions and to take a position in the trial court and on appeal. That policy was not in place on February 20, 2015, when F.J.G.M.'s amended petition was considered by the trial court. F.J.G.M.'s amendment to his petition, filed before the hearing in the case, alleged that DCF services should be considered "since the minor has previously threatened to take his life due to the separation he endured from his mother," and "since the minor has not been with either of his parents since the age of two years, DCF services might be necessary to ease reunification with the mother and help the minor cope with the abandonment from his father."[5] The amended petition also alleged that Honduras was subject to a United States Department of State warning based on a "critically high" level of crime and violence, that F.J.G.M. was already the respondent in an Immigration Court removal action, and that he had no parent or other caretaker in Honduras to rely upon if deported to that country.

DCF did not investigate or respond to those allegations, and they were not addressed in the trial court's brief hearing or its short order denying the petition

---

[5] Although F.J.G.M. was released to his mother in Miami by the Office of Refugee Resettlement in August 2013, he had not lived with her from the time he was two years of age until he was ten. His biological father filed a written acknowledgment of paternity and consent to F.J.G.M.'s dependency petition, certifying that he had in fact abandoned F.J.G.M.

without adjudicative findings. In this appeal, DCF filed a "Notice of the Department's Position" explaining that it would not participate in the appeal because "The Department did not assert its party status, did not appear as a litigating party in the trial court, and did not take a position in the underlying proceedings on the issue of whether the Appellant proved the statutory requirements for dependency."

These recent developments, the number of such cases, and the recent shift away from individualized adjudication is detailed in my dissent in another such case, In re B.R.C.M., 41 Fla. L. Weekly D36 (Fla. 3d DCA Dec. 30, 2015). For the sake of brevity, I rely upon the analysis in that dissent but do not repeat it here.

F.J.G.M.'s petition seeks an adjudication that would assist him in applying for SIJ status under federal immigration law,[6] but that is not a proper basis for dismissing or denying the petition. As detailed in H.S.P., findings of fact and an adjudication of an immigrant juvenile's claims as to each parent are appropriate. An evidentiary hearing (rather than a four-minute,[7] non-evidentiary hearing and summary denial), together with specific written findings and conclusions, will also allow meaningful appellate review.

---

[6] 8 U.S.C. § 1101(a)(27)(J); see also § 39.5075, Fla. Stat. (2015).

[7] This is the time according to the hearing transcript.

16

I have not concluded that F.J.G.M.'s amended petition should be granted, because his allegations are still subject to proof at an evidentiary hearing. At this procedural point, however, I would reverse and remand the amended petition to permit DCF to consider and take a position on F.J.G.M.'s allegations. I would direct the trial court to conduct an evidentiary hearing on remand and issue written findings on the allegations of dependency as to each parent.

For these reasons, I respectfully dissent from the written opinion issued by the majority today, and from the denial of F.J.G.M.'s motions for rehearing and rehearing en banc.