# Third District Court of Appeal

## State of Florida

Opinion filed December 28, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1448
Lower Tribunal No. 16-15397
_____

**W.B.A.V., a minor child, et al.,**
Appellants,

vs.

**Department of Children and Families,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Martin Zilber, Judge.

Catholic Charities Legal Services and Felix A. Montanez, for appellants.

Karla Perkins, for appellee.

Before SUAREZ, C.J., and LAGOA, and SALTER, JJ.

PER CURIAM.

Affirmed.

SUAREZ, C.J., and LAGOA, J., concur.

SUAREZ, C.J. (concurring)

In light of prior case law from this Court and the absence of any ruling from the Florida Supreme Court, I am compelled to join in the affirmance of this case. See In the Interest of F.J.G.M., 196 So.3d 534 (Fla. 3d DCA 2016); D.A.O.L. v. Dep't of Children & Families, 170 So.3d 927 (Fla. 3d DCA 2015); In re J.A.T.E., 170 So.3d 931 (Fla. 3d DCA 2015); M.J.M.L. v. Dep't of Children & Family Servs., 170 So.3d 931, 932 (Fla. 3d DCA 2015); In re B.Y.G.M., 176 So.3d 290 (Fla. 3d DCA 2015); In re K.B.L.V., 176 So.3d 297 (Fla. 3d DCA 2015).

Nevertheless, I share the concerns of Judge Salter in his dissent and would hope this matter will be looked at by the Florida Supreme Court. I wholeheartedly agree with the policy and reasoning expressed by Judge Salter.

SALTER, J. (dissenting).

I respectfully dissent. In this case, four undocumented orphans from El Salvador, W.B.A.V. (age 17 when the petition was filed), twins M.V.A.V. and F.A.A.V. (each age 15 at that time), and J.E.A.V. (age seven at that time), petitioned for an adjudication of dependency under section 39.01(15)(e), Florida Statutes (2016). The petition was summarily denied "based on case law" following a brief non-evidentiary hearing.[1] I would reverse and remand this case to the trial court for an evidentiary hearing and individualized adjudication.

The Petition

With the assistance of a non-profit legal services provider, the four orphans filed a petition for an adjudication of dependency in May 2016. They alleged that their mother was murdered in their home in El Salvador on January 27, 2012, and that their father died from complications of diabetes on June 6, 2014. They attached official death certificates and certified translations to substantiate these facts.

The four children further alleged that, after moving among various relatives' homes following their mother's death, they were the subject of a petition for

---

[1] The transcript of the hearing indicates that the colloquy and ruling lasted 13 minutes.

3

guardianship by their maternal aunt, Saira, which was granted by a family court in El Salvador. Thereafter, Saira and the four children were threatened with death by members of a violent gang, MS-13 or "Mara Salvatrucha,"[2] unless they paid $2,000.00 apiece for protection; this incident was reported to the police (and the report is attached to the petition), but to no avail. All five then fled to the United States border, where the children were separated from Saira and detained at an Office of Refugee Resettlement (ORR) shelter for unaccompanied children.

The petition alleges that the four children were released a month later to the physical care of their maternal uncle, Rafael, in Miami, and that Saira was released by an Immigration and Customs Enforcement detention center. The children petitioned for an adjudication of dependency based on section 39.01(15)(e), Florida Statutes (2016), applicable to children who "have no parent or legal custodians capable of providing supervision and care."

At the hearing on the petition in May 2016, the Department of Children and Families (DCF) advised the trial court that the State was not objecting to a determination of dependency. On appeal, however, DCF argues that the petition for dependency was correctly denied because of the guardianship order in El

---

[2] The U.S. Department of State "El Salvador Travel Warning" describes MS-13 and warns that "the current murder rate in El Salvador is among the highest in the world, an annual rate of 103.1 murders per 100,000 citizens for 2015. In comparison, the U.S. rate is 4.5 per 100,000."
https://travel.state.gov/content/passports/en/alertswarnings/el-salvador-travel-warning.html (advisory last updated Jan. 15, 2016; site last visited Nov. 1, 2016).

Salvador (though that order has not been recognized by a court in Florida or any other state).

After counsel for the children advised the trial court that all four children were living with Saira and Rafael (the maternal aunt and uncle of all four children) in Miami following their release by ORR, this colloquy ensued:

Court: Are the children in school?

Counsel: Yes, Your Honor.

Court: Doing well?

Counsel: I believe so, you can ask them.

Court: In need of any services or need anything at this time?

Counsel: Not at this time. What they are in need of is for somebody, an adult, to have that legal custody document available. As it is, Saira was unable to pick up the children from school because they wouldn't recognize the document from El Salvador.

Court: Okay, and again, we've had a lot of these cases recently and there's been a lot of case law on it as well, and it's not that I don't feel for what's happened in these countries but case law has been very specific that this is not for immigration and/or other purposes.

The trial court ultimately concluded that "you can go to probate court and get a legal custodian issued for the aunt or uncle," and that an adjudication of dependency would be denied "based on case law." The court also denied an oral motion by counsel for the children for a home study "to make sure that the home is

5

an appropriate place." Following a motion for rehearing by the four children and the denial of that motion, a written order was entered denying the petition. This appeal followed.

Analysis

In In re T.J., 59 So. 3d 1187 (Fla. 3d DCA 2011), this Court reversed an order summarily denying a similar petition brought by an immigrant child whose mother had died. T.J. was in the care of his aunt in Miami, but the record established that his aunt was not a "parent or legal custodian capable of providing supervision and care" under section 39.01(15)(e). Id. at 1190. The record in the present case does not disclose whether the family court in El Salvador conferred such rights on Sarai in Florida, and in fact the children's petition in the Florida trial court alleged that "[t]he children do not have a judicial order recognizing the validity or legality of the foreign custody order in the United States, which is necessary for medical, educational, and legal purposes."

"We review the summary denial of the amended petition under a de novo standard." Id. at 1188. Applying that standard of review and our holding in In re T.J. to the children's petition in the present case, we should reverse and remand the children's prima facie case to the trial court for an evidentiary and adjudicatory hearing.

It also bears noting that many other cases involving unaccompanied immigrant children—frequently referred to as "special immigrant juvenile" or "SIJ" cases because of the designation used in federal immigration law[3] and recognized in a Florida statute[4]—have been filed throughout Florida and the United States over the past few years. Appellate opinions regarding these cases have illuminated the policy differences regarding immigration and whether state dependency courts should "subordinate ourselves to the whim of the United States Congress" when asked to consider such cases.[5] The Florida Supreme Court has declined to decide one such case on grounds of mootness (the immigrant juvenile became too old to be declared dependent during the pendency of the appellate proceedings),[6] but other unaccompanied immigrant cases are pending before that Court.[7]

---

[3] See 8 U.S.C. § 1101(a) (27)(J).

[4] Section 39.5075, Florida Statutes (2016).

[5] In re K.B.L.V., 176 So. 3d 297, 300 (Fla. 3d DCA 2015) (Shepherd, J., specially concurring).

[6] O.I.C.L. v. Fla. Dep't of Children &Families, 41 Fla. L. Weekly S405a, 2016 Fla. Lexis 2072 (Fla. Sept. 22, 2016). In an opinion dissenting from dismissal on grounds of mootness, Chief Justice Labarga observed that approximately 2,908 unaccompanied immigrant minors were released to sponsors in Florida in fiscal year 2015, and approximately 4,264 unaccompanied immigrant minors were released to sponsors in Florida as of July 2016. Slip op. at 8-9.

[7] In re B.R.C.M. v. Fla. Dep't of Children and Families, Case No. SC16-179; In re E.P.N. v. Fla. Dep't of Children and Families, Case No. SC16-184; and In re

For the sake of brevity, I will rely upon my dissent in <u>In re B.R.C.M.</u>, 182 So. 3d 749 (Fla. 3d DCA 2015), as additional analysis applicable to the present case and to this dissent. The order summarily denying the dependency petition filed by these four immigrant children should be reversed and remanded for an evidentiary hearing and the entry an adjudicative order containing specific findings.

For these reasons, I respectfully dissent.

---

<u>S.A.R.D. v. Fla. Dep't of Children and Families</u>, Case No. SC16-285.